In the Matter of the VIDEO GROUP, INC., a Michigan Corporation, Debtor.

BANK OF the COMMONWEALTH, a Michigan banking corporation, Plaintiff,

v.

Herbert S. KEIDAN, Receiver, Gordon T. Ford, and Pepisco Leasing Corporation (Chandler Leasing Division), Defendants.

Bankruptcy No. 76–92170–H.

United States Bankruptcy Court, E. D. Michigan, S. D.

Dec. 14, 1979.

Irving A. August, Birmingham, Mich., for bankrupt.

John W. Callahan, Hoops & Hudson, Detroit, Mich., for Bank of the Commonwealth.

Herbert S. Keidan, Birmingham, Mich., receiver for bankrupt.

Thomas B. Radom, Southfield, Mich., for Gordon T. Ford.

Sheldon S. Toll, Detroit, Mich., for Chandler Leasing.

## OPINION

HARRY G. HACKETT, Bankruptcy Judge.

The instant action, although initiated by plaintiff Bank of the Commonwealth, against the receiver of the debtor, Gordon T. Ford, and Pepsico Leasing Corporation is in fact a controversy between the plaintiff Bank and defendant Gordon T. Ford.

The dispute has its genesis in two secured transactions, both occurring sometime in 1977. The transaction first in time involved the debtor, The Video Group, Inc., and the Bank. The latter took a security interest in "inventory" belonging to the former. Subsequently, the debtor gave defendant Ford a security interest in "equipment". Both the secured transactions were duly perfected. Thus, neither the validity nor the priority of the respective liens is an issue herein since both were perfected and admittedly the Bank lien was prior in time to the Ford lien. The sole issue is the nature of the security, i. e., is it "equipment" or is it "inventory". If the latter, the Bank prevails; if the former, Ford is entitled to the proceeds, the property having been sold pursuant to stipulation.

In May of 1975, debtor purchased for $10,000 a quantity of property at a sale held by the Internal Revenue Service with the view of utilizing the property acquired in connection with the operation of its television production facility. The property thus acquired subsequently became the subject

matter of the secured transactions previously mentioned.

The plaintiff Bank contends that the property purchased was "inventory" for three reasons: First, shortly after the purchase of the property from the Internal Revenue Service, debtor increased the amount of inventory carried on its books by some $250,000. Admittedly, this increase resulted from the Internal Revenue Service acquisition. See page 26 of the transcript. Second, the property acquired by the debtor from the Internal Revenue Service became "inventory" because debtor's acquisition contemplated a resale. See page 13 of the transcript. Finally, the property acquired was leased or furnished under contracts of service to third parties.

M.S.A. Section 19.9109 M.C.L.A. § 440.-9109 provides that: "Goods are . . .

" . . . 'equipment' if they are used or bought for use primarily in business (including farming or a profession) or by a debtor who is a nonprofit organization or a governmental subdivision or agency or if the goods are not included in the definitions of inventory, farm products or consumer goods; . . .

. . . 'inventory' if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process or materials used or consumed in a business. Inventory of a person is not to be classified as his equipment."

■ Needless to say, plaintiff's first contention that the goods in question are "inventory" simply because they were carried on the debtor's books as such, is without merit. If this were the determinative factor, the Court could as easily accept the characterization of the goods as "equipment" in accordance with the statement contained in plaintiff's Exhibit 1 to the effect that:

" . . . the company hereby agrees to promptly apply proceeds of sale of any such *equipment* in payment on such loan unless specifically authorized by the bank to use any portion of such sale proceeds

for another purpose in The Video Group, Inc." (Emphasis ours)

See page 11 of the transcript. See also plaintiff's Exhibits 2 and 3, pages 12, 13, and 14 of the transcript, which characterize the goods as "equipment".

■ Nor can the Court accept the plaintiff's contention that the goods in question were purchased for resale, and hence were "inventory". It is true that at the very outset the debtor, in its dealings with the institutions who financed the purchase of the goods from Internal Revenue Service, recognized the possibility that some of the goods may be sold at some future date. But, on the other hand, testimony was introduced which demonstrated that the primary purpose of the acquisition of the goods in question was to "interface" with existing equipment to enhance the "production facility of The Video Group". See page 34 of the transcript. Another primary purpose of the acquisition was to furnish a second studio. And to this end the purchased goods were stored until it could be determined how much of it would be used. See pages 30 and 42 of the transcript.

■ The Court concludes that neither the characterization of goods by the debtor as "inventory" nor the fact that the latter contemplated the possibility of a resale of part of the goods is determinative of their proper classification. Even though goods are held for immediate or ultimate resale, in order for them to be properly classified as "inventory" the possible sale must be contemplated to occur in the ordinary course of business. See comment No. 3, M.S.A. 19.9109, M.C.L.A. § 440.9109 which states that:

"The principal test to determine whether goods are inventory is that they are held for immediate or ultimate sale. Implicit in the definition is the criterion that the prospective sale is in the ordinary course of business. Machinery used in manufacturing, for example, is equipment and not inventory even though it is the continuing policy of the enterprise to sell machinery when it becomes obsolete.

Goods to be furnished under a contract of service are inventory even though the arrangement under which they are furnished is not technically a sale. When an enterprise is engaged in the business of leasing a stock of products to users (for example, the fleet of cars owned by a car rental agency), that stock is also included within the definition of 'inventory'. It should be noted that one class of goods which is not for disposition to a purchaser or user is included in inventory: 'Materials used or consumed in a business'. Examples of this class of inventory are fuel to be used in operations, scrap metal produced in the course of manufacture, and containers to be used to package the goods. In general it may be said that goods used in a business are equipment when they are fixed assets or have, as identifiable units, a relatively long period of use; but are inventory, even though not held for sale, if they are used up or consumed in a short period of time in the production of some end product."

It has been said that inventory

" . . . is the merchandise or stock in trade, conceived of as a unit presently and continuously in existence—a 'floating mass' the component elements of which may be constantly changing without affecting the identity of the res."

It is also

" . . . like a river, the water in which continually flows, rises and falls, but which always constitutes a river."

See *In Re Nickerson & Nickerson, Inc.*, D.C., 329 F.Supp. 93, 96.

In the case at bar, the evidence clearly shows that the goods in question had none of the attributes of merchandise or stock in trade. There was no rising or falling of the water in the river. The goods were not intended to be, nor were they, disposed of in the ordinary course of the debtor's business as contemplated by M.S.A. 19.9109, M.C.L.A. § 440.9109.

■■ All that remains is plaintiff's contention that the property involved was leased or furnished under contracts of service to third parties. Once again, plaintiff has fallen short of demonstrating with clear and convincing proof the existence of all elements required by the Uniform Commercial Code to show that debtor leased or furnished the goods in question under contracts of service. To be sure, at times third parties utilized debtor's facilities on a per diem basis. But when the facility was so used, debtor's employees operated the facility and apparently performed all the necessary services in connection with its utilization. See page 48 of the transcript. This is inconsistent with a "lease and furnishing under a contract of service". In *In Re Le Mieux*, D.C., 362 F.Supp. 1040, the bankrupt was engaged in contract hauling of raw milk for farmers, and in carrying on this business he utilized a tank truck. In reversing a lower court holding that the truck was inventory because it had been "furnished under a contract of service", the court held that:

" . . . In support of his finding that the truck was inventory, the Referee cited no cases and noted that counsel had been unable to find any controlling authority, but relied on the definition of inventory in Minn.Stat. § 336.9–109 that 'goods are "inventory" if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them . . . ' It is conceded that the tank truck was not held 'for sale or lease', but the Referee found that it had been 'furnished under contracts of service'. It is the opinion of this court that the meaning of 'furnished under contracts of service' cannot be so broadly construed as to include the tank truck in question here. To be sure, the truck was utilized by the bankrupt under a contract of service; but it cannot be said that the truck was *furnished*, which term implies some transfer from the debtor to his customer of rights to possession and/or use. Comment 3 to Section 9–109 of the 1962 Official Text of the Uniform Commercial Code makes clear that a transaction having at least some of the characteristics of a sale is contemplated by the word 'furnished'.

No such sale-like transaction is involved here. The truck is more in the nature of equipment and was used merely to haul milk belonging to the bankrupt's customers for his own profit, and always remained in the exclusive control of the bankrupt; no right of control over the truck ever passed to the customers . . ."

In the case at bar, as was the case in *In Re Le Mieux*, supra, the goods in question at all times remained in the possession of debtor through its employees. Accordingly, the Court finds that the debtor facility, including the goods in question, were not for "lease" or to be "furnished under contracts of service" nor were they "so furnished".

An order consistent with the ruling herein may be submitted for signature.