Grafton, }
June 2, 1925. }

ALVIN F. WENTWORTH & *a. v.* ERNEST A. SARGENT & *a.*

A contract for the sale of standing timber, paid for entirely by notes, providing that all timber should remain the property of the vendor until payment in full of the purchase price, and that the vendee should apply as payment on the notes not less than a certain specified sum for each cord of pulp wood and each thousand feet of lumber cut on the premises, clearly contemplates the sale of the timber in the ordinary course of business, when cut, and reserves upon each unit of timber cut a lien only to the extent of the sum specified for each cord or thousand feet, and not a general lien to secure the entire purchase price.

REPLEVIN, for logs and lumber. The defendants pleaded title. The question of title was transferred without ruling by *Sawyer*, J. The facts appear in the opinion.

*Alvin F. Wentworth* and *Warren, Howe & Wilson* (*Mr. Howe* orally), for the plaintiffs.

*Raymond U. Smith* and *Owen & Veazey* (*Mr. Smith* orally), for the defendants.

ALLEN, J. The defendants, owning land in Rumney, bargained and sold to one Nichols the standing timber on it. A written instrument was executed by them, the essential provisions of which were that the "vendors . . . doth by these presents agree to sell to" Nichols as purchaser the timber, "hereby conveying the right of entry and right of way for the said purchaser . . . upon said premises for the purpose of felling, cutting down and carrying away said trees" and to stick the pulpwood and lumber sawed from the timber on the lot. The full purchase price was represented by notes, and the instrument provided that "all standing . . . trees" on the lot "shall be and remain at all times, and wherever the lumber and pulpwood may be, the sole property" of the defendants until payment in full of the purchase price, and that Nichols should "apply as payment on the notes the sum of not less than five dollars per cord for all the pulpwood cut on said premises and the further sum of not less than five dollars per thousand feet for all lumber cut." Nichols was to keep the lumber cut insured for the defendants' benefit and to pay taxes on the timber, lumber and pulpwood. The timber was to be cut and carried away within three years. The notes were payable six months after date.

Nichols proceeded at once to operate the timber. He cut, sold and delivered to different parties about 500 cords of pulpwood within about six months after the date of the instrument. About four months after its date he contracted to sell and deliver to the plaintiffs 1,600,000 feet of logs from the lot. Under this contract and within four months after its date 433,800 feet were delivered. When the plaintiffs learned of the defendants' claim, they made no further payments to Nichols, and the balance due him amounted to five dollars per thousand feet for all he delivered the plaintiffs. The defendants refused to accept this amount on tender and instead took possession of the 433,800 feet, then partly sawed into lumber. When the action was brought, the defendants had received no payment on their notes from Nichols.

The instrument between the defendants and Nichols was a deed in the sense that it was a written instrument signed, witnessed and under seal, and conveyed interests in real estate. It had all the necessary formalities of a deed except acknowledgment. An unacknowledged deed is effective and binding between the parties and against the grantor and his heirs. P. S., c. 137, s. 4. For the conveyance of timber, a special statute (Laws 1907, c. 27, s. 2) provides that "no deed of bargain and sale, mortgage or other conveyance of

such [standing] trees . . . shall be valid to hold such trees against any person but the grantor and his heirs only, unless . . . attested, acknowledged and recorded. . . ."

In substance also, the instrument undertook in purpose and effect to convey interests in realty. The statement that the defendants "agree[d] to sell" the timber expressed a concluded transaction of sale, and was sufficient to denote a present transfer of title. *Ives* v. *Hazard*, 4 R. I. 14. The conveyance of the incidental easements requisite to the operation of the timber was explicit, as already noted. The limit of three years in which to cut and carry away the trees has also been mentioned. This was the only regulation of management reserved as to the timber. The right to carry away the pulpwood and lumber left no possession or control in the defendants after its removal. No further instruments of writing between the parties were contemplated. The instrument not only set forth what the parties were to do but provided, according to its evident intent, that performance by Nichols should operate automatically to remove and discharge all limitations and reservations affecting his ownership, title and interest.

The conveyance was full and complete, aside from the reserved lien to secure payment of the purchase price. There was otherwise no reservation of any legal or equitable rights, and payment of the price would leave with the defendants no vestige of title in any of the products of the timber removed. Except for the lien, the rights to operate the timber, to carry away its products, and to use and dispose of them as his own gave Nichols sole and unrestricted ownership of it within the defined period.

The clause that the timber and its products should remain "the sole property" of the defendants until payment of the purchase price was merely a reservation of a lien. The particular form of language used is not important, if its purpose only to reserve the lien appears. It was obviously intended only to give security for payment of the property sold. The deed undertook to vest the full equitable title in the purchaser and that payment should make such title the legal title, thus corresponding with the title of a mortgagor.

The conflict of authority over vendors' liens mainly relates to their validity when not expressly reserved in the deed of conveyance, and the cases in this state in which the subject has been discussed, without decision, appear to be of such situations. In *Buntin* v. *French*, 16 N. H. 592, it was held that if there might be such a lien, it did not exist when the vendor took other security. In *Arlin* v.

*Brown,* 44 N. H. 102, it was held not to be "a favorable case for the consideration of a question of such importance," the facts showing a consideration inconsistent with the creation of a lien. In *Sawyer* v. *Peters,* 50 N. H. 143, the question was referred to as an "open" one. In none of these cases was the claimed lien expressly reserved.

Decision as to the validity of the lien here claimed to be reserved, and, if valid, whether it continued in effect after the timber was cut, and applied to its products as against third persons without notice, is not required under the circumstances which appear. If the lien was valid against the plaintiffs, the tender was of the full amount of the lien reserved on the replevied property, in any event. In its scope and extent the lien was distributed so that each unit of timber bore only its allotted share of the whole.

Nichols' right to operate the lot impliedly carried with it the right to sell and dispose of the product in a customary and natural manner incident to operation, subject only to such restrictions as might be expressed. While the right of sale and disposal was not expressly stated, neither was it expressly withheld. In the absence of language restricting operation on an ordinary basis of doing such business, the fact that no part of the price was paid, with the specific reservation of the lien for each unit of timber cut, while the general operation of the lot was permitted, requires the inference of an understanding from the language used that payment was to be made from the proceeds of the products, and, this being so, the conclusion follows that the parties understood the products might be sold in instalments and from time to time, provided the unit payments which were specified were made.

This conclusion is not altered by such facts as appear by way of parol evidence throwing light on the meaning of the language. This evidence is somewhat meagerly and incompletely reported. From the facts that over 500 cords of pulpwood were cut and 1,600,000 feet of other logs, it is assumed there was enough timber to pay the full price at the rate of five dollars a cord for pulpwood and the same amount for each thousand feet of other logs, or at least that the parties estimated such an amount. Whether the 500 cords of pulpwood and the logs contracted to the plaintiffs exhausted the timber on the lot does not appear. Nor does it appear that the respective rates for pulpwood and other logs were disproportionate and did not represent a reasonable stumpage allowance. The assumed sufficiency of the timber, however, is confirmatory rather than controlling. Whatever the amount of timber was either in

fact or estimation, and whatever its stumpage value and the relative value between pulpwood and other logs, the contract nevertheless subjected the general security to the special discharge by prorating payments, giving unsecured credit for any insufficiency of payments in such manner.

No reasonable explanation of the special clause other than as a limitation of the general retention of a lien suggests itself.

The defendants' claim of a lien on all the timber and its products until they were paid in full means that no part of the product might be delivered until they were thus paid. While the instrument may be susceptible of a meaning with such a result, the adoption of such a construction would involve such embarrassment and hindrance of operation as to make such an intention unlikely in the absence of language necessarily showing it, and it would disregard the situation created by the instrument of Nichols' general ownership. The impractical and unreasonable results of such a construction preclude its adoption as against one which in the situation presented more probably accords with the understanding the parties had.

The defendants' theory that the provisions for unit payments were a protection against waste has no reasonable support. It was as much the interest of Nichols to avoid waste as of the defendants to have it avoided. To guard against waste by the requirement of unit payments and at the same time to prevent the delivery of any logs and lumber until full payment was made defeated the essential purpose of enabling Nichols to operate in a way which would enable him to pay.

Security for payment being limited by the provision for payments for timber cut, the lien did not follow its products after such payments were made.

*Judgment for plaintiffs.*

All concurred.