Strafford,
No. 6342.

FREDERICK J. BARRY, ADM'R W.W.A. OF ESTATE OF
ELSIE M. COURSER

*v.*

BANK OF NEW HAMPSHIRE, NATIONAL ASSOCIATION.

June 30, 1972.

*Frederick J. Barry,* pro se, and *Beamis & Davis* (*Mr. Glen
G. Davis* orally) for the plaintiff.

*Devine, Millimet, McDonough, Stahl & Branch* and *Luke S.
O'Neill, Jr.* (*Mr. O'Neill* orally) for the defendant.

PER CURIAM.   Action to recover for the conversion of certain
lumber the title to which the plaintiff claims remained in
the seller until payment. The defendant claims that its interest
under a security agreement covering the inventory of the
buyer was superior to any interest of the plaintiff. The main
issue to be decided is whether the rights of the parties are
to be determined under the Uniform Commercial Code, RSA
ch. 382-A. This question was reserved and transferred, with-
out ruling, by *Loughlin,* J., on an agreed statement of facts.
In the fall of 1964, Elsie M. Courser, by her then agent

plaintiff Frederick J. Barry, entered into an oral agreement with Leigh F. Jaques d/b/a George E. Jaques Lumber Co. to sell him standing timber on her land in Kingston. It was to be paid for at the rate of $18 per thousand board feet, mill tally, and the timber and its products were to remain the property of the seller until the price was paid. Pursuant to this agreement, Jaques cut timber on this lot between December 17 and 31, 1964, which he removed to his mill in the town of Lee and manufactured into 84,000 board feet of square edge and round-end pine lumber. On January 20, 1965, the parties agreed orally that Jaques would pay therefor $1283.40 in cash and the balance in lumber to be delivered to the Courser lot. Jaques' check dated January 22, 1965, was returned for insufficient funds and no payment in money or lumber was ever made.

Manchester National Bank, now a part of the defendant Bank of New Hampshire, had filed Uniform Commercial Code financing statements on July 13, 1961, with the secretary of state and also with the city clerk of Dover, where Jaques' office was located. RSA 382-A:9-401. These statements pertained to a factor's lien agreement dated July 3, 1956, covering Jaques' inventory and receivables and the proceeds and products thereof.

Plaintiff's position can be summarized as follows. The agreement of the parties not being in writing (RSA 477:35) did not transfer to Jaques the legal title to the timber but it constituted an executory contract for the sale of growing timber title to which, by its terms, was to remain in the seller until payment was made. Plaintiff further contends that at severance Jaques obtained only an equitable right in the trees and resulting lumber. Hence the factor's lien of the bank was ineffective against the seller because the buyer lacked legal title to the timber and lumber claimed to be covered by the bank's lien. *Towne* v. *Davis,* 66 N.H. 396, 22 A. 450 (1890); *Hodson* v. *Kennett,* 73 N.H. 225, 60 A. 686 (1905). The bank argues that the transaction comes within the provisions of Article 2 "Sales" and Article 9 "Secured Transactions" of the Uniform Commercial Code (RSA ch. 382-A) which grants it superior rights in the lumber. Under RSA 382-A:2-107 the agreement between seller and buyer in this case

did not involve the sale of goods movable at the time of identification to the contract and the sale aspect of the transaction was not covered by article 2 of the code.

It is the security for payment aspect of the agreement which is in controversy between the plaintiff seller and the defendant bank. This phase is dealt with in article 9 of the code. The general purpose of this article is to bring under its provisions "all consensual security interests in personal property and fixtures" with certain exceptions not material here. RSA 382-A:9-102(1)(a), Uniform Law Comments. It covers goods which are movable at the time a security interest attaches. RSA 382-A:9-105(1)(f), a definition of goods differing from that of article 2. RSA 382-A:2-107, 9-105, New Hampshire Comments. A security interest means an interest in personal property which secures payment or performance of an obligation such as security for the purchase price of goods which are part of inventory. RSA 382-A:9-107,-109. Such security interest attaches only when (1) there is agreement that it attach, (2) value is given, (3) the debtor has rights in the collateral. RSA 382-A:9-204 (1).

Under the oral agreement in this case the buyer Jaques did not acquire any rights in the timber before he entered on the land and severed it. *Hodson* v. *Kennett,* 73 N.H. 225, 60 A. 686 (1905); *Blanchard Co.* v. *Company,* 80 N.H. 161, 115 A. 4 (1921). However, upon severance Jaques obtained rights in the resulting movable personal property which later became part of his lumber inventory. RSA 477:35; 52 Am. Jur. 2d Logs and Timber *ss.* 10, 58 (1970). It was upon severance also that plaintiff's purchase money security interest and the defendant bank's factor's lien became effective on the cut timber and lumber which is in controversy in this case. RSA 382-A:1-201(37); 9-204(2)(b); *see Wentworth* v. *Sargent,* 82 N.H. 111, 129 A. 878 (1925); RSA ch. 446 (now repealed); RSA 382-A:9-101, Uniform Laws and New Hampshire Comments; ABA Uniform Commercial Code Handbook 257 (1964).

Plaintiff's purchase money security interest in Jaques lumber which became part of his inventory could have had priority over the defendant bank's duly filed financing statement also covering this inventory only if the plaintiff had

notified the bank of her security interest before Jaques cut the timber and lumber. RSA 382-A:9-312(3)(a)-(c). Plaintiff did not comply with this requirement. Furthermore plaintiff failed to comply with the requirements of RSA 382-A:9-203(1)(b) that a security agreement be signed by the debtor describing the land on which the timber was to be cut.

We hold that the security interests of the plaintiff and of the bank are governed by Article 9 of the Uniform Commercial Code and that by virtue of RSA 382-A:9-312(3) the bank's interest is superior to that of the plaintiff. Consequently we hold that defendant's demurrer should be sustained and judgment entered for the defendant.

*Remanded.*