In re Jerry Ray BURNETT and James Cecil Burnett, Debtors.

Otis C. WATERFIELD and Margaret Waterfield, his wife, Plaintiffs,

v.

James Cecil BURNETT, Jr., Jerry Ray Burnett, his wife, and Neil Gittelman, trustee, Defendants.

Bankruptcy No. 81–01067 M A.
Adv. No. 82–0314.

United States Bankruptcy Court,
D. New Mexico.

June 11, 1982.

Michael Guest, Albuquerque, N. M., for plaintiffs.

Douglas T. Francis, Albuquerque, N. M., for defendants Burnett.

Neil Gittelman, Albuquerque, N. M., Trustee.

Walter L. Reardon, Jr., Albuquerque, N. M., for defendant Trustee.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court May 20, 1982, on plaintiffs' Motion Requesting Abandonment of Property and Complaint for Relief from Stay. The facts are as follows:

The plaintiffs, Otis C. Waterfield and Margaret Waterfield, sold their business in Tucumcari, New Mexico, to Jerry Ray Burnett and James Cecil Burnett pursuant to various notes, security agreements, mortgages, and contracts signed in August, September, and October of 1980. The Burnetts subsequently declared bankruptcy and a trustee, Neil Gittelman, was appointed. (The term "defendants" as used hereinafter will refer to the Burnetts and the trustee, as all were named defendants in this action.) The plaintiffs contend that they are owed in excess of $220,000.00 under these various agreements and the defendants agree that they owe $219,000.00 of that amount. The plaintiffs further contend that they hold a valid security interest in all of the business property held by the defendants. The defendants stipulated to the plaintiffs' security interest in the real property, agreeing to abandon that real property, but contest the secured status of the saleable merchandise (inventory) of the business. At the hearing on plaintiffs' motion, the Court took the question of the secured status of the inventory under advisement, but made the following findings of value as to all property in which a security interest is claimed:

| | |
|---|---|
| Real Property | $120,000.00 |
| Fixtures | 5,000.00 |
| Debtors' Assignable One-half Interest in Class C Wrecker Permit | 25,000.00 |
| Inventory | 40,000.00 |

This Court now makes the following findings as to the secured status of the inventory of saleable parts:

Section 9–303 of the Uniform Commercial Code, N.M.Stat.Ann. § 55–9–303 (1978), provides that a security interest is perfected when it has attached and the steps required for perfection in sections 9–302, 9–304, 9–305, and 9–306 are taken. In this case, perfection requires the filing of a financing statement which meets the requirements of § 9–402 of the Uniform Commercial Code. Attachment occurs when the creditor extends value and enters into an agreement for the debtor to give a security interest to the creditor in some property of the debtor. N.M.Stat.Ann. § 55–9–204 (1978). This agreement which creates or provides for a security interest is a security agreement under Section 9–105(1)(h).

Under these sections, if a financing statement is filed, value is extended, a security agreement is executed, then there is a security interest in the described collateral. It should be noted that Section 9–303 does not require that these steps be taken in any order. Section 9–312(5)(a) anticipates that these steps can be taken in any order and gives priority to the security interest which was filed first, even if that security interest had not attached at the time of filing.

In the instant case, it is clear that the plaintiffs extended value by transferring possession of the business property in question. The security agreement is found in the supplemental contract, signed August 21, 1980, which provides that the defendants would execute a promissory note for the balance due on the inventory and that that promissory note would be secured by a third mortgage on the real property and by the security agreement already executed. Neither party has disputed either the existence of the security agreement or the sufficiency of attachment. The only question before this Court is whether the financing statement and security agreement filed with the Quay County Clerk are sufficient to perfect the plaintiffs' security interest as to the amount advanced for the inventory and not specifically mentioned in the financing statement on file.

First this Court must look to the formal requirements of a financing statement as defined by law. Section 9–402 of the Uniform Commercial Code states:

A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types or describing the items, of collateral. ... a copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties.

N.M.Stat.Ann. § 55–9–402(1).

The financing statement before this Court is signed by the Waterfields and the Burnetts and there has been no allegation that the signatures are not genuine. Both the plaintiffs' and debtors' addresses are on the first page of the financing statement, along with the identity and address of an additional party—the First National Bank in Tucumcari, as the secured party's agent—from whom information about the security interest could be obtained. As to the statement indicating the types, or describing the items, of collateral, this statement gives a security interest in the "referenced inventory," "furniture, furnishings, fixtures, equipment, supplies and personal property" owned by debtor and used and/or usable in connection with the business. The terms "inventory," "equipment," and "supplies" are sufficient to meet the requirement that collateral must be described in general language reasonably describing the items. *Jones and Laughlin Supply v. Dugan Production Corporation*, 85 N.M. 51, 508 P.2d 1348 (Ct.App.1973). As to whether this financing statement covers the inventory for all amounts, it must first be observed that there is no requirement that any amount be mentioned. The Official Comment, U.C.C. § 9–402 (1968), observes that this section adopts "notice filing" and is not intended to indicate more than that the secured party may have a security interest in the collateral and anticipates that further inquiry beyond the financing statement will be necessary. Indeed, this comment states that a financing statement may even secure future advances not provided for in the financing statement, and the vast majority of case law holds that a financing statement on file is sufficient notice to any party of present or future security interests in the collateral named in the financing statement. *Allis-Chalmers Credit Corp. v. Cheney Investment, Inc.*, 227 Kan. 4, 605 P.2d 525 [28 U.C.C.Rep. 574] (1980); *James Talcott, Inc., v. Franklin National Bank of Minneapolis*, 292 Minn. 277, 194 N.W.2d 775 [10 U.C.C.Rep. 11] (1972); *In re Gruder*, 89 Misc.2d 477, 392 N.Y.S.2d 203 [21 U.C.C. Rep. 287] (1977); *Chrysler Credit Corp. v. Community Banking Co.*, 35 Conn.Supp. 73, 395 A.2d 727 [24 U.C.C.Rep. 223] (1978).

Accordingly, this Court finds that plaintiffs have a valid security interest in the inventory which secures the promissory note for $50,000.00 executed by the Burnetts. Further, this Court finds that since the amount due the plaintiffs is undersecured by the real estate, fixtures, assignable interest in the wrecker permit, and inventory, all such property should be abandoned by the trustee and the automatic stay shall be lifted to allow the plaintiffs to proceed against the property.

An appropriate order shall enter.