**In re SOUTHERN VERMONT SUPPLY, INC., Debtor.**

**Bankruptcy No. 85–215.**

United States Bankruptcy Court, D. Vermont.

March 20, 1986.

Cortland T. Corsones of Rutland, Vt., for Borg-Warner Acceptance Corp. (BWAC).

Alan R. Medor of Rutland, Vt., for Southern Vermont Supply, Inc., debtor.

Jerome I. Meyers, White River Junction, Vt., for and as Trustee.

Joseph J. O'Dea, Manchester, Vt., for Chittenden Trust Co. (CTC).

## FINDINGS, MEMORANDUM OPINION, AND FINAL ORDER

FRANCIS G. CONRAD, Bankruptcy Judge.

This matter is before us on the motion of BWAC, a purchase money inventory financier, for relief from the automatic stay provision of 11 U.S.C. Section 362 in connection with various items identified as the debtor's inventory holdings, and for relief to collect any cash or non-cash proceeds, chattel paper, instruments, documents, accounts, general intangibles, contract rights, and security agreements held by the debtor in which BWAC asserts a security interest.

By Interim Order of this Court dated March 4, 1986, BWAC has been granted the right to reclaim its inventory. These Findings, Memorandum Opinion, and Final Order supplement the Interim Order.

The sole issue in this proceeding is who has priority in debtor's inventory under Article 9 of the Uniform Commercial Code (UCC), 9A V.S.A. (1962 Version).

Via BWAC's attorney, the Court sent notice of the motion to provide an opportunity for parties in interest to object to the motion. Two objections were received and the matter was set for final hearing in accordance with 11 U.S.C. Section 362(d).

One of the objectors, Cablecraft Incorporated, objected generally to the motion for relief, but failed to state any grounds in its letter of objection or to make an appearance at the hearing on February 27, 1986. Accordingly, we must deny any relief requested.

The other objector, CTC, asserted general grounds in opposition to the motion. For its specific ground, CTC stated that it had a perfected security interest in the inventory prior in time and that BWAC's security interest, if any, is subordinate to CTC's security interest.

The trustee did not oppose BWAC's motion and represented to the Court that "the claim of BWAC is superior to his." Later in the hearing, after some evidence had been presented, the trustee indicated he had since modified his position so that he was still not opposed to relief from stay being granted, if the Court so ordered, however he would release only those items that are adequately identified by serial number.

The evidence adduced at the hearing established the following facts:

1) On March 8, 1985, the debtor and CTC entered into a security agreement;

2) CTC caused to be filed a financing statement between CTC and the debtor in the Manchester, Vermont, Town

Clerk's Office on March 14, 1985 at 9:00 A.M.;

3) CTC caused to be filed a financing statement between CTC and the debtor in the Vermont Secretary of State's Office on March 13, 1985;

4) Both of CTC's financing statements covered the following items or types of property:

"All equipment, and machinery, including power driven machinery and equipment, furniture and fixtures, together with all replacements thereof, all attachments, accessories, parts and tools, all passenger and commercial motor vehicles registered for use upon public highways or streets, together with all replacements thereof, all attachments, accessories, parts, equipment and tools, all inventory, raw materials, work in process and supplies, all accounts receivable now outstanding or hereafter arising, all contract rights and all tangible or intangible, or mixed personal property now existing and hereafter acquired.";

5) Neither of the financing statements, produced as an exhibit (CTC # 1), is signed by CTC or the debtor;

6) BWAC and the debtor entered into an "Inventory Security Agreement and Power of Attorney" on March 18, 1985 (BWAC's exhibit # 2);

7) BWAC and the debtor intended to include within the collateral covered by the "Security Agreement and Power of Attorney" the following:

"(a) All inventory of goods of whatever description held for sale or lease by the debtor, now or hereafter owned, or now or hereafter in the possession, custody or control of debtor, wherever located, together with all attachments, parts, accessories, additions and substitutions, including all returns and repossessions (hereinafter called "Inventory");

(b) All accounts, contract rights, chattel paper, and general intangibles now owned or hereafter existing in favor of

or acquired by debtor (hereinafter called "Accounts");

(c) All equipment, furniture and fixtures, wherever located, now owned or hereafter acquired or now or hereafter in the possession, custody or control of the debtor and all replacements, substitutions and accessions thereto and thereof;

(d) All reserves, however created, of debtor in the possession or control of Secured Party;

(e) All of debtor's rights to any rebates, discounts, credits, factory holdbacks and incentive payments which may become due to debtor by the manufacturer or distributor with respect to any of the Inventory;

(f) All proceeds from all or any part of the above described Collateral including but not limited to insurance proceeds payable by reason of loss or damage to any of the Collateral, cash, goods, equipment, instruments, accounts, chattel paper, contract rights, general intangibles, replacement inventory or otherwise.";

8) A financing statement between BWAC and the debtor was filed in the Manchester, Vermont, Town Clerk's Office on March 23, 1985 at 11:45 A.M. (BWAC's exhibit # 3);

9) A financing statement between BWAC and the debtor was filed in the Vermont Secretary of State's Office on March 27, 1985 at 1:52 P.M. (BWAC's exhibit # 3);

10) Both of BWAC's financing statements covered the following items or types of property:

"All inventory of goods of whatever description held for sale or lease by the debtor, now or hereafter owned, or now or hereafter in the possession, custody or control of debtor, wherever located, together with all attachments, parts, accessories, additions and substitutions, including all returns and repossessions; all accounts, contract rights, chattel paper, and general intangibles now owned or hereafter ex-

isting in favor of or acquired by debtor; all equipment, furniture and fixtures, wherever located, now owned or hereafter acquired or now or hereafter in the possession, custody or control of the debtor and all replacements, substitutions and accessions thereto and thereof; and all proceeds from all or any part of the above described collateral including but not limited to insurance proceeds payable by reason of loss or damage to any of the collateral, cash, goods, equipment, instruments, accounts, chattel paper, contract rights, general intangibles, replacement inventory or otherwise.";

11) On April 13, 1985 BWAC sent written notification to Chittenden Trust Company at P.O. Box 1229, Manchester Center, Vermont 05255 stating that BWAC has or expects to acquire a purchase money security interest in inventory of Southern Vermont Supply, Inc., the debtor;

12) On April 25, 1985 CTC refused to acknowledge a copy of the written notification, stating the following on the notification:

"REFUSED 04/25/85

Since the Chittenden Bank has filed a financing statement, covering inventory and other items, we respectfully must refuse your request.

Yours Very Truly,
/s/ Joseph P. Cronin
Vice President"

13) On April 30, 1985 BWAC sent a second written notification to CTC, at the same address as the first notification; CTC signed the acknowledgement of receipt;

14) Although BWAC did not move the notification letter into evidence, it was attached to its motion, and both representatives of CTC and BWAC alluded to it and testified about it. Accordingly, written notice of a purchase money security interest was given to CTC by BWAC; the first notification letter is attached to this Opinion as exhibit "A";

15) CTC, by its agents, acknowledged that BWAC had a second security position. No specific evidence was presented to explain what CTC meant by a second position, but the totality of the evidence in the proceeding requires us to find that CTC meant BWAC had a second secured position to whatever it held as a first position in the inventory of the debtor;

16) That the earliest date that goods were invoiced and delivered to the debtor by BWAC or its distributors was April 23, 1985; and

17) The uncontradicted testimony of BWAC's representative indicated that no goods were received by the debtor prior to the financing statement filings, the signing of the security agreement, and the first notification letter;

18) Items sent to the debtor are invoiced and placed on a trust receipt, a document that lists everything to be held in a vendee's inventory and that informs BWAC what it paid to its distributor for goods delivered to a vendee;

19) BWAC employs full-time auditors who audit the inventory of a vendee on a monthly basis by comparing invoices and receipts to a vendee's inventory;

20) BWAC conducted audits of the debtor;

21) Use of a computer to generate inventory reports necessarily limits BWAC's ability to list complete manufacturers' serial numbers on invoices and trust receipts; and

22) the trust receipts and the invoices used by BWAC (BWAC # 4) are sufficiently detailed to identify what items were delivered to the debtor.

BWAC, in this proceeding, may best be described as an inventory financier. CTC, on the other hand, may best be described as a working capital supplier. Both used the assets of the debtor as collateral to protect their loans against default by perfecting security interests in the collateral. Article 9 of the UCC governs how a security interest attaches and how it is perfected.

The sole issue presented for decision is whether BWAC's security interest in the debtor's inventory is first in priority over CTC's. We hold that it is.

■ A security interest cannot attach to inventory until there is an agreement * that it attach, value is given, and the debtor has rights in the collateral, 9A V.S.A. Section 9–204(1). Attachment of a security interest is a prerequisite to perfection of the interest. *Bramble Transportation Inc. v. Sam Senter Sales, Inc.*, 294 A.2d 97 (Del. Super.Ct.1971); Aff'd 294 A.2d 104 (Del. 1972); *Barry v. Bank of New Hampshire*, 112 N.H. 226, 293 A.2d 755 (1972). Here, BWAC and debtor have an agreement within the meaning of the UCC. The agreement provides in paragraph # 4 that a security interest will attach. The necessary value to BWAC is the inventory provided. The debtor's interest is the right to sell the inventory in its normal course of business. Because we do not have before us the security agreement between CTC and debtor, we give them the benefit of the doubt that they have a similar agreement. Even if we assume CTC has such an agreement, it would not change our decision.

■ "The security agreement defines what the collateral is so that, if necessary, the creditor can identify and claim it, and the debtor or other interested parties can limit the creditor's rights in the collateral given as security." *Thorp Commercial Corporation v. Northgate Industries, Inc.*, 654 F.2d 1245, 31 U.C.C.R.S. 801 (8th Cir.1981). 9A V.S.A. Section 9–110 governs the sufficiency of the description of personal property for purposes of Article 9. "The test of sufficiency of a description laid down by this section is that the description do the job assigned to it; that it *make possible* the identification of the thing described." Uniform Law Comment to 9A V.S.A. Section 9–110. (emphasis added) Clearly BWAC's description of its collateral meets the test laid down by the National Conference of Commissioners on Uniform State Laws. See *In re Laminated Veneers Co., Inc. v. Commercial Trading Company, Inc. v. Bassin*, 471 F.2d 1124, 11 U.C.C.R.S. 911 (2d Cir.1973) (a security agreement must be reasonably specific); *In re Flaten*, 13 B.C.D. 216, 50 B.R. 186 (Bkrtcy.D.N.C.1985) (to the same effect); *United States v. First National Bank in Ogallala, Nebraska*, 470 F.2d 944 (8th Cir.1973) (purpose of description in security agreement is only to evidence agreement); *Varney Wood Products, Inc. v. Strickler*, 458 F.2d 435 (4th Cir.1972) (the code has rejected "exact and detailed descriptions in favor of those which reasonably identify what is described"); *In re Mitchell Bros. Construction, Inc.*, 52 B.R. 92 (Bkrtcy.W.D.Wi.1985) (more detail may be required when the actual interest is only partial).

■ In this proceeding, BWAC is a special type of inventory financier known as a purchase money inventory financier. BWAC is not the seller or the supplier of goods in this proceeding but the conduit, which enables the debtor to receive goods from wholesalers or distributors used by BWAC. "When a purchase money interest is claimed by a secured party who is not a seller (it) must of course have been given present consideration." 9A V.S.A. § 9–107, Uniform Law Comment # 2. The trust receipt used by BWAC each time goods were delivered to the debtor constitutes present consideration. Thus, BWAC qualifies as a purchase money security interest holder within the meaning of Section 9–107(b).** It is also clear to us that the

---

* 9A V.S.A. Section 1–201(3) states:

"Agreement" means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in this title (Sections 1–205 and 2–208). Whether an agreement has legal consequences is determined by the provisions of this title, if applicable; otherwise by the law of contracts (Section 1–103). (Compare "Contract").

** 9A V.S.A. Section 9–107(b) states:

A security interest·is a "purchase money security interest" to the extent that it is ...
(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

trust receipt used by BWAC in its dealings with the debtor also serves as a security agreement and is specifically recognized by the UCC as a type of agreement capable of creating a security interest. 9A V.S.A. Section 9–102(2).

Because BWAC is a purchase money inventory financier, it must comply with 9A V.S.A. Section 9–312(3)(a)–(c), which provides:

(3) A purchase money security interest in inventory collateral has priority over a conflicting security interest in the same collateral if

(a) the purchase money security interest is perfected at the time debtor receives possession of the collateral; and

(b) any secured party whose security interest is known to the holder of the purchase money security interest or who, prior to the date of filing made by the holder of the purchase money security interest, had filed a financing statement covering the same items or type of inventory, has received notification of the purchase money security interest before the debtor receives possession of the collateral covered by the purchase money security interest; and

(c) such notification states that the person giving the notice has or expects to acquire a purchase money security interest in inventory of the debtor, describing such inventory by item or type.

The first requirement of Section 312(3)(a) is that the purchase money security interest (PMSI) be perfected at the time the debtor receives possession of the inventory. A security interest is perfected when it has attached 9A V.S.A. Section 9–204(1), and when all applicable steps required for perfection have been taken. The steps required for perfection of a security interest need not be taken in any order. *In re Burnett*, 21 B.R. 752 (Bkrtcy.D.N.M.1982).

One of the requisite steps to ensure perfection of a security interest is the filing of a financing statement, 9A V.S.A. Section 9–302(1), "by presentation for filing of a financing statement ... (and) acceptance of the statement by (a) filing officer", 9A V.S.A. Section 9–403, in the proper place for filing, 9A V.S.A. Section 9–401(1)(c). BWAC has performed all of these steps. CTC also complied with the filing requirements to ensure perfection of its security interest prior to BWAC, although its failure to present a written security agreement clouds its claim to a secured position.

The UCC accords a favorable position to an entity that makes a loan to finance the purchase of inventory, but requires additional steps beyond those ordinarily taken to achieve perfection of the security interest. The reason for the extra steps is that in the normal commercial setting there is usually some person or entity that has advanced funds, that has taken an "after acquired" property security interest, and that is ordinarily committed to making future advances if the conditions of the underlying agreements are fulfilled by the debtor. See also U.C.C. 9A V.S.A. Section 9–312, Uniform Law Comment # 3.

One of these additional steps under 9A V.S.A. Section 9–312, the step crucial to the issue in this proceeding, requires that "any secured party whose security interest is known to the holder of the PMSI or who, prior to the date of the filing made by the holder of the PMSI, had filed a financing statement covering the same items or type of inventory receive notice of the PMSI before the debtor receives possession of the collateral covered by the PMSI." 9A V.S.A. Section 9–312(3)(b). BWAC complied with this provision.

■ CTC asserts that the notification merely places BWAC in a second position. CTC's position is entirely without merit and unsubstantiated by the case law. Even though one secured party has arranged to finance all the debtor's inventory through future advances and under an "after acquired property clause", such secured party cannot prevent a PMSI financier of inventory from effectively financing the PMSI arrangement and taking a superior security interest, provided the PMSI financier files and takes the necessary steps in 9A V.S.A. Section 312(3)(a)–(c). See gener-

ally, *Secured Transactions,* 69 Am.Jur.2d Section 495. In other words, a PMSI financier who complies with 9A V.S.A. Section 9–312(3)(a)–(c) may finance and achieve a superior secured position. See *King's Appliance & Electronics Inc. v. Citizens & Southern Bank of Dublin,* 157 Ga.App. 857, 278 S.E.2d 733 (1981) (perfected PMSI in inventory has priority over a conflicting prior security interest in the same property if the PMSI is perfected at the time debtor received possession of the inventory—decided under 1972 version of UCC Section 9–312). *GAC Credit Corporation v. Small Business Administration,* 323 F.Supp. 795 (D.C.W.D.Mo.1971) (to the same effect). See also *Morton Booth Company v. Tiara Furniture,* 564 P.2d 210 (Okla.1977) (an unperfected security interest is a security interest without priority over conflicting security interest rather than one without validity).

Finally, CTC asserts that the written notice it received (Exhibit "A"), required to be sent under 9A V.S.A. Section 312(3)(c), is insufficient because it is too general and covers inventory not delivered to the debtor. There is relatively little case law on the sufficiency of the required notice, but the UCC has provided the statutory base upon which we are able to render a decision.

The function of the notification letter is to prevent a fraudulent debtor from deceiving a secured lender who is obligated to make future advances by requiring that the secured lender receive notice of the PMSI from the PMSI financier. Presumably the secured lender can then decide to advance or not advance future funds as it considers appropriate.

9A V.S.A. Section 312(3)(c) requires notice of the PMSI. Under the UCC, "A person has 'notice' of a fact when .. he has received a notice or notification of it." 9A V.S.A. Section 1–201(25)(b). Nothing can more clearly convey BWAC's intent than its notice, which states "... Borg-Warner Acceptance Corporation has or expects to acquire a purchase money security interest in inventory of the following debtor(s) ..."

While the 1962 version of the UCC does not require that the notification to the PMSI be in writing, See *GAC Credit Corporation v. Small Business Administration,* supra (telephone notice approved). We believe this is the better practice. See *King's Appliance & Electronics Inc.,* supra (1972 UCC version requires written notice).

Failure to provide clear notice of an intent to acquire a PMSI will not constitute notice under U.C.C. Section 9–312(3)(b)–(d). *Ford Motor Credit Co. v. First State Bank,* 674 S.W.2d 437, 38 U.C.C.R.S. 1440 (Tex.App.1984), rev'd 38 U.C.C.R.S. 679, Op. replaced 679 S.W.2d 486 (Tex.1984); *Sears, Roebuck and Company v. Detroit Federal Savings and Loan Association,* 79 Mich.App. 378, 262 N.W.2d 831 (1977).

As for the sufficiency of the description of the collateral in the notice, counsel for CTC argues that it was too general, not specific enough, and the bank could not tell what was being secured. We find this argument without merit. 9A V.S.A. Section 9–312(3)(b) requires that the collateral be described by item or by type. We were unable to find any cases interpreting the sufficiency of the description required under this section, but we note that the terms "by item or type" are used in 9A V.S.A. Section 9–402(3) and the cases interpreting this section uniformly indicate that the purpose of the financing statement is to "put creditors on notice that further inquiry is prudent." *In re Laminated Veneers Co.,* supra. The notice required is not intended to enable other creditors to learn the true nature of the secured transition, but to apprise filed creditors that the secured party may have a security interest in the collateral described. See *In re Cushman Bakery,* 526 F.2d 23 (1st Cir. 1975), cert. denied sub nom. *Agger v. Seaboard Allied Milling Corp.,* 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1976) quoting *Bramble Transportation Inc.,* supra, that "case law makes it abundantly clear that a financing statement is intended merely to put a searcher on notice that an underlying security agreement may be outstanding."

The notification required under 9A V.S.A. Section 9–312(3)(c) should rise to the same level of notice as a financing statement, namely, it should provide a description of the collateral sufficient to make possible identification of the things described. We reject the "exact and detailed" description that counsel for CTC argues for, on several grounds. First, because the UCC has specifically rejected this concept in favor of those descriptions which reasonably identify what is described, 9A V.S.A. Section 9–110, and secondly, because reasonable business practices render this type of exacting detail commercially impractical. The use of general terms in a notification by type of collateral is clearly permissible under Article 9 so long as the language does not mislead. BWAC's notification uses standard language, and although it contains irrelevant types of collateral, it is certainly sufficient to direct CTC to inquire further about the items that are collateral for BWAC's loans to the debtor. CTC cannot now complain the notice is insufficient when it, like an ostrich that squawks and buries its head in the sand when danger approaches, merely asserted its first security position and then took no further action to protect itself. We conclude that BWAC did all it was required to do under the code and, accordingly, its secured position in the inventory of the debtor is superior to that of CTC and of the trustee.

During the course of the hearing, the trustee conceded that BWAC's interest was superior to his, and thus satisfied BWAC's burden under 11 U.S.C. Section 362(b)(g)(1).

He objected to the fact that various items being claimed by BWAC lacked serial numbers, or that such numbers were incomplete. BWAC's witness testified that direct specification of items in invoices and trust receipts with incomplete specification of serial numbers is due to inadequate computer space or due to the type of item being supplied (for example, blank cassette tapes). Without rebuttal testimony by the trustee, we conclude that the identification is sufficient to allow BWAC to reclaim the inventory it allegedly delivered to debtor, if such inventory is in the hands of the trustee.

Finally, we address the other collateral BWAC asserts it holds a security interest in, namely, cash, non-cash proceeds, chattel paper, instruments, documents, accounts, general intangibles, contract rights, and security agreements. Because BWAC did not submit any evidence on this issue, and therefore did not satisfy the burden of 11 U.S.C. Section 362(g)(1), that part of its motion is DENIED. Accordingly,

It is ORDERED that:

1) The Interim Order of March 4, 1986 modifying the relief from stay so that Borg-Warner Acceptance Corporation may reclaim its inventory is made FINAL;

2) The portion of Borg-Warner Acceptance Corporation's motion for relief from stay as to other collateral is DENIED; and

3) The objection of Cablecraft Incorporated is DENIED.

## EXHIBIT A

### ⌐org-Warner Acceptance Corporati⌐

SUBSIDIARY OF BORG-WARNER CORPORATION

April 18, 1985

Chittenden Bank
PO Box 1229
Manchester Ctr., VT.  05255

### NOTIFICATION LETTER UNIFORM COMMERCIAL CODE

This is to notify you that Borg-Warner Acceptance Corporation has or expects to acquire a purchase money security interest in inventory of the following debtor(s), and in the proceeds of such inventory. Said inventory is described by item or type as follows:

All inventory of whatever kind or nature, including but not limited to, all inventory of appliances, stoves, refrigerators, dishwashers, garbage disposals, trash compactors, microwave ovens, freezers, washers, dryers, hot water heaters, water conditioning equipment, televisions, audio and electronic equipment, stereos, hi-fi equipment, tuners, speakers, receivers, turntables, radios, communication equipment, C.B.'s, tape players, video systems, P.A. systems, scanners, household products, sewing machines, pianos, organs, musical instruments, portable generators, wood burning stoves, saws, fireplaces, cabinets, vacuum cleaners, doors, furniture, space heaters, climate control units, air conditioning units, ceiling fans, ice machines, gas grills, lawn and garden equipment, computers, copying machines, and all similar or associated items or goods to be used separately from or in conjunction with any of the foregoing, wherever located, now owned or hereafter acquired, and all returns, repossessions, exchanges, substitutions, replacements, attachments, parts, accessories and accessions thereto and thereof, and all proceeds thereof (whether in the form of cash, instruments, chattel paper, general intangibles, accounts or otherwise).

| DEBTOR | ADDRESS | CITY & STATE |
|---|---|---|
| Southern Vermont Supply, Inc. | North Rt. 7 | Manchester Ctr., Vt.  05255 |

REFUSED 4/25/85
Since the Chittenden Bank has filed a financing statement, covering inventory and other items, we respectfully must refuse your request.

Yours Very Truly,

Joseph P. Cronin
Vice President

# 470427 304
In an effort to conserve on postage expense we have enclosed an acknowledgement copy of this notice which we would appreciate your signing and returning in the enclosed envelope. Thank you.

Borg-Warner Acceptance Corporation

By _____ NO _____

Date _____

Manchester, N.H.    2900    BRANCH

BWUCC 6 A (rev. 12/81)