[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Pursuant to General Statutes § 52-356c, Sono Urban Retail, LLC (SONO) has filed a post-judgment application in this matter asking that the court determine the superior interest in certain personal property currently situated at the commercial premises located at 31 South Main Street, Norwalk, Connecticut (premises).
SONO and the plaintiff, 31 South Main Street Associates, Inc., (31 South Main Street) have stipulated to the following facts, which the court so finds. SONO owns the premises and is the successor landlord thereof pursuant to a lease dated December 7, 1994. The plaintiff is the tenant under the lease. The term of the lease expires on December 14, 2003, and was in full force and effect at all times relevant to the issue presented in SONO's application.
From the time that 31 South Main Street took possession until approximately February 2000, 31 South Main Street operated a nightclub on the premises. In February, 2000, 31 South Main Street sold its assets, including personal property on the premises, to the defendant, CMB Associates, LLC (CMB). CMB financed its purchase, in part, with a secured note. Pursuant to their agreement, CMB granted 31 South Main Street a security interest in "all items set forth in Exhibit A, and after acquired property located in this premise at 128-134 Bedford Street, Stamford, Connecticut." (Stipulated Exhibits, Exhibit C, Section 2.) CMB subsequently defaulted on the note and 31 South Main Street commenced the instant action securing a judgment against CMB. Upon notifying SONO of its judgment against CMB, 31 South Main Street requested that SONO release the personalty to help satisfy the judgment. SONO refused to release the property.
Previously, on August 2, 2000, SONO caused a notice to quit to be served on 31 South Main Street and CMB requesting that they vacate the premises on or before August 10, 2000, for nonpayment of rent, CT Page 15984 unauthorized assignment of the lease and other grounds. On May 29, 2001, the parties surrendered possession of the premises to SONO, leaving items of personalty behind. On April 3, 2002, SONO informed the plaintiff that pursuant to Article 9 of the Uniform Commercial Code (UCC), it intended to sell the personalty at the premises on June 27, 2002. See General Statutes § 42-9-504. The day before the public auction, 31 South Main Street caused a property execution to be served on SONO. SONO immediately filed its application for determination of interests in disputed property. This court held a hearing on SONO's application as required by General Statutes § 52-3556c (c), (f) and Simko v. LaMorte,222 Conn. 793, 798, 610 A.2d 663 (1992).
General Statutes § 52-356c (a) provides: "Where a dispute exists between the judgment debtor or judgment creditor and a third person concerning an interest in personal property sought to be levied on, or where a third person claims that the execution will prejudice his superior interest therein, the judgment creditor or third person may, within twenty days of service of the execution or upon application by the judgment creditor for a turnover order, make a claim for determination of interests pursuant to this section." The application requires this court to determine whether 31 South Main Street's or SONO's interest in the subject personalty is superior.
SONO is the owner and successor landlord and 31 South Main Street is the tenant on a lease agreement dated December 7, 1994. The third paragraph of the lease provides in part: "The landlord is hereby granted alien, in addition to any statutory lien or right to distrain that mayexist, on all personal property of the tenant in or upon the demisedpremises, to secure payment of the rent and performance of the covenants and conditions of this lease." (Emphasis added.) SONO maintains that paragraph three of the lease represents a security agreement as defined by Article 9. Article 9 "applies (a) to any transaction, regardless of form, which is intended to create a security interest in personal property or fixtures including goods. . . ." General Statutes §42a-9-102 (1). In opposition, 31 South Main Street argues that based upon a plain reading of the statute, SONO does not have an Article 9 interest.
General Statutes § 42a-9-104 provides in pertinent part: "This article does not apply . . . (b) to a landlord's lien. . . ." "Although the common law does not recognize a right to a landlord's lien, many states confer the right by statute . . . [which] varies from jurisdiction to jurisdiction." 2 R. Powell, Powell on Real Property § 16A.01[5][c], p. 16A38-39 (Michael Allan Wolf ed., September 2002). Connecticut, however, is among those states "which have no provisions for CT Page 15985 . . . landlord liens. . . ." 1 Restatement (Second) Property, Landlord and Tenant § 12.1 c., p. 412 (1977). Moreover, the parties to this action have not cited to any statute providing for such liens. SONO's interest in the personalty arises by a contractual agreement between the parties. "The contractual landlord's lien generally is considered a chattel mortgage. The lien therefore falls within the definition of `security interest' as that term is used in article nine of the Uniform Commercial Code."[1] 2 R. Powell, supra, § 16A.01[5][b], p. 16A-38.
"`Security interest' means an interest in personal property or fixtures which secures payment of performance of an obligation." General Statutes § 42a-201 (37). Here, 31 South Main Street granted a lien on all its personal property in or upon the premises in favor of the landlord to secure its obligation of rent among other things. Therefore, as successor landlord on the lease agreement, SONO has a security interest in 31 South Main Street's personal property in and upon the premises.
When a security agreement becomes enforceable between the parties, it is said to "attach." Black's Law Dictionary (6th Ed. 1990). "Attachment has two general consequences. First, the security interest becomes `enforceable against the debtor'. If the debtor defaults, the secured creditor can foreclose or otherwise realize on the collateral[2] to satisfy his claim. Second, the security interest becomes "enforceable against . . . third parties." J. White R. Summers, Uniform Commercial Code (2d Ed. 1980) § 23-1, p. 902. "Attachment occurs as soon as all of the events specified in subsection (1)[3] [of 42a-9-203] have taken place unless explicit agreement postpones the time of attaching." General Statutes § 42a-9-203 (2). Here, the 1994 lease agreement does not provide a description of the subject collateral other than "all personal property of the Tenant in and upon the demised premises. . . ." While General Statutes § 42a-9-110 provides that "[f]or the purposes of this article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described," at the time that 31 South Main Street entered into the lease agreement dated December 7, 1994, it represented itself as a "newly formed corporation without any assets."[4]
Because there were no assets to describe at the time the lease was created, SONO's security interest in the subject collateral did not attach until May 29, 2001, when it took possession of the personalty.
When 31 South Main Street sold its business in February, 2000, and assigned its lease to CMB, the security agreement between the parties granted 31 South Main Street "a present and continuing security interest in the Collateral described in Section 2. . . ." (Stipulated Exhibits, CT Page 15986 Exhibit C, Section 1.1.) Section 2 of the CMB security agreement provides: "As used herein, `Collateral' shall mean and include, except and as and to the extent specifically excluded in Schedule B hereto, all items set forth in Exhibit A, and after acquired property located in this premise at 128-134 Bedford Street, Stamford, Connecticut." While the contents of Exhibit A is not known,[5] attached to a copy of the bill of sale dated February 16, 2000, is a document titled, "Velvet Night Club Equipment List Schedule A." (Stipulated Exhibits, Exhibit K.) The court finds that this list of items represents the collateral referred to in the security agreement signed by CMB, and as such, 31 South Main Street's interest in that collateral attached on February 16, 2000.
The sale of 31 South Main Street's business and assets did not extinguish SONO's earlier security interest in "any and all of the Tenant's property upon the demised premises." Contrary to 31 South Main Street's argument that CMB, as the bona fide purchaser, is the owner of the disputed property, General Statutes § 42a-9-306 (2) provides: "Except where this article otherwise provides, a security interestcontinues in collateral not with standing sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor. (Emphasis added.) On May 29, 2001, when SONO took possession of the collateral, its interest attached, becoming enforceable against 31 South Main Street. Moreover, in taking possession of the collateral, SONO also perfected its interest.
"A security interest in goods . . . may be perfected by the secured party's taking possession of the collateral." General Statutes §42a-9-305. "A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained. . . ." General Statutes § 42a-9-305. "Perfection of a security interest deals with those steps legally required to give a secured party an interest in subject property against the debtor's creditors." Black's Law Dictionary (6th Ed. 1990). "A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken." General Statutes § 42a-9-303 (1).
Perfection can also be obtained by filing a financing statement. Indeed, it is required to perfect all security interests that do not fall within one of the exceptions set forth in General Statutes §42a-9-302.[6] On June 7, 2002, 31 South Main Street filed a UCC-1 financing statement with the secretary of state, a copy of which has been submitted. (Stipulated Exhibits, Exhibit H). In doing so, 31 South Main CT Page 15987 Street perfected its interest in the collateral identified at the time of filing. "Where . . . a security agreement is executed, an indebtedness created, and a financing statement describing the collateral filed . . . the lender has a perfected security interest in the collateral . . .Chrysler Credit Corporation v. Community Banking, 35 Conn. Sup. 73, 38,395 A.2d 727 (1978); see also Cabaret, Inc. v. Martin ArchambaultLtd. Partnership, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 70 25 62 (Oct. 5, 1992, Schaller, J.) ("Security interests are perfected by the filing of a UCC-1 financing statement with the secretary of state. Conn. Gen. Stat. 42a-9-302.").
The court finds that both SONO and 31 South Main Street have attached, perfected, security interests in the same collateral and now looks to General Statutes § 42a-9-312 to determine which interest is superior. General Statutes § 42a-9-312 (3) provides in relevant part: "[P]riority between conflicting security interests in the same collateral shall be determined according to the following rules: (a) Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is perfected. . . ." Here, because SONO's interest in the collateral perfected May 29, 2001, and 31 South Main Street's interest perfected upon filing on June 7, 2002, SONO's interest is superior. Furthermore, although 31 South Main Street obtained a judgment against CMB on October 24, 2001, SONO's interest is still superior. See, e.g., Bruni v. Union Trust Co., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 124756 (June 21, 1994, Mottolese, J.) (9 CSCR 709) (court persuaded by such propositions as "a judgement creditor is effectively a competing lien creditor whose interests are subordinate to a previously perfected security interest in the subject collateral," and that "a prior perfected security interest in the accounts receivable of a debtor was entitled to priority over a judgment lien against the debtor.").
For all the foregoing reasons, SONO has a superior security interest in the collateral at issue. If the parties are unable to identify the exact personalty in which SONO has a superior interest in, they are ordered to report to case flow to schedule a hearing date for such determination.
 ___________________ LANDAU, S.R.A.C.