**ROYALTON COLLEGE, INC.**

v.

**Ramsey CLARK, as Attorney General of the United States, Harold Howe, II, as Commissioner of Education of the U. S. & Bernard Steen, as District Director, Immigration and Naturalization Service.**

Civ. A. No. 5102.

United States District Court
D. Vermont.

Jan. 31, 1969.

John H. Downs, Downs & Rachlin, St. Johnsbury, Vt., for plaintiff.

Joseph F. Radigan, U. S. Atty., Rutland, Vt., and Paul Nejelski, U. S. Dept. of Justice, Washington, D. C., for defendants.

## OPINION

LEDDY, District Judge.

This is an action for declaratory judgment that a petition submitted by the plaintiff, Royalton College, Inc., to the Attorney General of the United States through the Vermont District Director of the Immigration and Naturalization Service for approval as an institution in which foreign students may study while enjoying a nonimmigrant alien status under the Immigration and Nationality Act of 1952 should be granted. The action has been brought against the Attorney General, the Vermont District Director of the Immigration and Naturalization Service (I.N.S.) and the United States Commissioner of Education.

The defendants have submitted the files of the I.N.S. and the United States Office of Education (U.S.O.E.) to the Court and on the basis of this record have moved for a summary judgment alleging that there are no genuine issues of fact and that they are entitled to a judgment on the law. Defendants have also moved for the dismissal of this action as to the United States Commissioner of Education on the grounds that he is not a proper party. The records of the I.N.S. and U.S.O.E. show the facts to be as follows:

Royalton College was established in September, 1965, in South Royalton, Vermont. It was intended to be a small liberal arts college with an emphasis on foreign studies. A program was created which called for the enrollment of foreign students.

On May 29, 1966, Royalton College submitted to the District Director of the I.N.S. a petition for approval as a school for attendance of foreign students. Under section 101(a) (15) (F) of the Immigration and Nationality Act of 1952, as amended, foreign students may be admitted as nonimmigrant aliens—that is, outside of the quota system—if they will attend "an established institution of learning or other recognized place of study in the United States * * * approved by the Attorney General after consultation with the Office of Education of the United States * * *." 8 U.S.C. § 1101(a) (15) (F) (1964).

Pursuant to section 103 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1103 (1964), the Attorney General of the United States has issued regulations which establish the procedures for approval and elaborate on the standards set down in the Act. The regulations provide a general standard for approval of schools:

> To be eligible for approval the petitioner must establish that it is a bona fide school, that it is an established institution of learning or other recognized place of study, that it possesses the necessary facilities, personnel and finances to conduct instruction in recognized courses, and that it is in fact engaged in instruction in those courses.

8 C.F.R. § 214.3(e).

The regulations also state that after consultation with the U.S.O.E., it has been determined that schools listed in the current U.S.O.E. publication "Accredited Higher Institutions" or "Education Directory, Part III, Higher Education" (hereinafter referred to as the U.S.O.E. publications) meet the general standard. 8 C.F.R. § 214.3(c). The U.S.O.E. has set down certain criteria for listing in these publications. Institutions accredited by a nationally recognized accrediting agency and those "accredited or approved * * * by a State Department of Education or by a State University" are eligible for inclusion. In addition, institutions may be included if their credits "have been and are accepted as if coming from an accredited institution by not fewer than three accredited institutions." United States Office of Education, Education Directory, Part III, Higher Education 1 (1967).

Finally, the regulations provide that if a college is not listed in the U.S.O.E. publications, it must submit evidence that it confers upon its graduates recognized bachelor, master, doctor, professional or divinity degrees, or if it does not confer such degrees, that its credits have been and are accepted unconditionally by at least three institutions of higher learning which are either operated by the United States or by a state or are listed in the U.S.O.E. publications. 8 C.F.R. § 214.3(b).

The petition for approval submitted by Royalton College went to the defendant, Bernard Steen, District Director of the I.N.S. in St. Albans, Vermont. After the petition was sent, the College submitted certain supporting evidence, and an inspector was sent to view the facilities at Royalton.

The evidence submitted by Royalton and that gained from the observations of the inspector reveal that Royalton College was incorporated in Vermont and capitalized according to the laws of Vermont. They also reveal that the facilities were good and that the college was well situated. There were 20 students and 10 teachers. The college had $606,200 in total assets and $202,025 in liabilities and capital subscriptions outstanding.

Upon receipt of the above information, the District Director solicited the opinion of the U.S.O.E. with regard to Royalton's petition. In December of 1966, the U.S.O.E. recommended that approval be delayed pending receipt of evidence that degrees earned at Royalton are recognized by other institutions of higher education or that credits earned at Royalton are and have been accepted unconditionally by at least three accredited institutions of higher education. The prerequisites were apparently set because Royalton was not listed in the U.S.O.E. publications.

At the time of the above communication, Royalton did not and could not submit the required evidence. In early 1967, however, because of a new Vermont Statute and actions by the Vermont Department of Education pursuant to that statute, Royalton attempted to be included in the U.S.O.E. publications and obtain approval through that listing. The statute provides that articles of association for a Vermont corporation organized to engage in higher education must first be approved by the Vermont Board of Education acting on the advice of the Vermont Higher Education Council. The Vermont Department of Education may give approval only if it finds that the corporation is conducting a "bona fide institution of higher learning, giving instruction in arts and letters [etc.] * * * and has or will have the resources, including personnel, requisite for the conduct of an institution of higher learning." 16 V.S.A. § 148(a) (Supp. 1968). The statute grants the power to make regulations but does not specifically provide for periodic review of a school's qualifications or revocation of approval once granted.

Acting pursuant to the statute, the Vermont Department of Education sent an inspection team to Royalton College and subsequently approved it for the 1967–68 academic year. The Department of Education report also stated that Royalton would be approved for successive years, if annual inspections by the Department showed that Royalton had made satisfactory progress toward meeting a number of recommendations. These recommendations related mainly to administration and content of the library and further delineation of the programs of study and course requirements. In addition, one recommendation related to the securing of a full time history and English teacher.

The Vermont Department of Education reported the approval of Royalton College to the U.S.O.E. and asked for inclusion in its publications based on this approval. The U.S.O.E. indicated, however, that because the Vermont Department of Education did not have the power to review qualifications or revoke approval, it could not be considered an accrediting or approval agency for purpos-

es of listing in the U.S.O.E. publications.

In June, 1967, Royalton attempted to submit additional evidence to the I.N.S. to gain approval. A letter was sent to the U.S.O.E. indicating that various colleges had stated that they would accept credits from Royalton College. This evidence was rejected by the U.S.O.E. on the grounds that there was no indication that credits had actually been accepted in the past by an institution.

On July 19, 1967, the Royalton petition was officially denied by the District Director of the I.N.S. This denial was affirmed by the Regional Commissioner.

On December 13, 1967, Royalton sent letters to the Regional Commissioner and to the U.S.O.E. asking that the case be reopened because of new evidence. The evidence submitted was a statement that three accredited colleges had accepted credits earned at Royalton. The names of the colleges were listed along with the names of the students whose credits were accepted and the date of acceptance.

On December 22, 1967, the Regional Commissioner informed Royalton that he did not consider the evidence submitted sufficient grounds to warrant reopening the proceedings but that Royalton could submit a formal petition to reopen. Subsequently, the U.S.O.E. indicated that before it could make any recommendations, it would have to write directly to the institutions which have allegedly accepted Royalton's credits. It did note, however, that one of the colleges that had accepted Royalton's credits was not accredited and that, as a result, this acceptance could not be used in determining Royalton's eligibility.

Since that time, the U.S.O.E. has submitted a questionnaire to the colleges listed by Royalton. There have been two responses,—one college indicating total acceptance of credits and the other indicating nonacceptance because the work at Royalton was repetitive of the student's earlier work.

Jurisdiction in this case is founded on the Administrative Procedure Act, 5 U.S.C. § 701 et seq. (Supp. II 1966), and The Declaratory Judgment Act, 28 U.S.C. § 2201 (1964).[1]

On a motion for summary judgment, the moving party may prevail only when there is no genuine issue of fact, and the moving party is entitled to prevail on the law. Fed.Rules Civ.Proc. rule 56(c); Poller v. Columbia Broadcasting Sytem, Inc., 368 U.S. 464, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). In a proceeding to review an administrative decision by the I.N.S., the court may consider only such evidence as was properly presented before the I.N.S. See Todaro v. Pederson, 205 F.Supp. 612, 613 (N.D.Ohio 1961), aff'd, 305 F.2d 377 (6th Cir. 1962). In this case, certified copies of the evidence, proceedings and decisions in the Immigration and Naturalization Service, along with copies of communications between the plaintiff and the U.S.O.E. have been submitted to the Court. Plaintiff has not contested either the admissibility of these documents for purposes of summary judgment motion or the validity of these documents. Therefore, there are no genuine issues of fact and the case is proper for summary judgment if the defendants prevail on the law.

In this action, plaintiff has contended that (1) the regulations under which the

---

1. These statutes are sufficient to give this Court jurisdiction in this case. See Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920, 932 (2d Cir. 1968); Cappadora v. Celebrezze, 356 F.2d 1 (2d Cir. 1966). The defendants have claimed that jurisdiction is also conferred by section 279 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1329 (1964). Section 279, however, confers jurisdiction on the district courts in civil or criminal cases only if they arise out of subchapter II of the Immigration and Nationality Act. Neither the approval section, 8 U.S.C. § 1101(a) (15) (F) (1964), nor the section giving the Attorney General rule making power, 8 U.S.C. § 1103 (1964) is within subchapter II of the Act. As a result, it does not appear that section 279 confers jurisdiction in this case.

Immigration and Naturalization Service has acted are unreasonable; (2) the interpretation of these regulations by the District Director and Regional Commissioner of the Immigration and Naturalization Service is unreasonable; (3) the findings of the District Director and Regional Commissioner in denying plaintiff's petition are not supported by substantial evidence; and (4) denial of plaintiff's petition is a violation of the United States Constitution.

I shall first consider the validity of the regulations. The statute that sets up the nonimmigrant alien class for foreign students requires that the schools these students are to attend be established institutions of learning or recognized places of study approved by the Attorney General. 8 U.S.C. § 1101(a) (15) (F) (i) (1964). Beyond stating that a school must be "established" or "recognized," the statute provides no approval criteria. The Act does, however, grant to the Attorney General the power to establish such regulations as are necessary to carry out his authority under the Act. 8 U.S.C. § 1103 (1964). Under this authority, the extensive regulations set out above have been enacted to define the criteria for approval. See 8 C.F.R. § 100.6.

■ The standards for review of administrative regulations are set out in the Administrative Procedure Act, 5 U. S.C. § 706(2) (Supp. II 1966), and are discussed in New York Foreign Freight Forwarders and Brokers Ass'n v. Fed. Maritime Comm., 337 F.2d 289, 295 (2d Cir. 1964). Under these standards, a regulation is presumed valid and may be found invalid only if it is shown that it is unreasonable, inapproriate or plainly inconsistent with the statute.

■ It is this Court's conclusion that the plaintiff has failed to show that the approval regulations are invalid under the above standards. The statutory requirement that schools be approved by the Attorney General serves at least two purposes. It insures that schools will not be established solely to provide a ve-

hicle for the entrance of aliens outside of the quota system. In addition, it insures that a foreign student will not travel a great distance to the United States to find that the institution he is to attend does not have the facilities or personnel to present him sufficient educational opportunities.

■ Although the statute provides loose guidelines for the establishment of standards through the use of the words "established" and "recognized," the Attorney General, as the person charged with the administration of the Immigration and Naturalization laws has broad discretion in implementing the policies of the Act he administers. See Earle v. United States, 254 F.2d 384 (2d Cir. 1958). It cannot be said that he has exercised his discretion unreasonably or inappropriately or that the standards that he has created are inconsistent with the statutory language.

■ The regulations may be, as the plaintiff suggests, somewhat strict and may make it difficult for a new school to receive approval. They also make it much easier for public schools to obtain approval than for private schools. These results, however, do not make the regulations defective. The plaintiff has not been able to point to any plain inconsistency between the statute and the regulations. Similarly, it has been unable to show that such results are unreasonable or inappropriate. Instead, it is this Court's conclusion that the regulations and classifications within them are consistent with the policies of the Immigration and Nationality Act of 1952. It is certainly reasonable for the Attorney General to conclude that somewhat strict standards are necessary to protect this country against unwarranted aliens and to protect foreign students from exploitation. It is also reasonable for him to conclude that public schools generally are more likely to be acceptable than private schools and, therefore, make it easier for public schools to gain approval.

■■ The second contention of the plaintiff is equally without merit. Administrative agencies are given broad discretion in interpreting regulations.

Since this involves an interpretation of an administrative regulation a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt. * * * [T]he ultimate criterion is the administrative interpretation which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.

Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413–414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). See Thorpe v. City of Durham Housing Authority, 393 U.S. ——, 89 S.Ct. 518, 21 L.Ed.2d 474 (Jan. 14, 1969); Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

There are a number of administrative interpretations that the plaintiff contends are erroneous in this case. Both the District Director and the Regional Commissioner of the I.N.S. took the position that the plaintiff would have to meet one of three requirements:[2] (1) that it "confers * * * recognized * * * degrees," 8 C.F.R. § 214.3 (b); or (2) that its credits "have been and are accepted unconditionally by at least three institutions of higher learning" listed in the U.S.O.E. publications, 8 C. F.R. § 214.3 (b); or (3) that it is listed in the U.S.O.E. publications, 8 C.F.R. § 214.3 (c).

The District Director interpreted the first requirement as placing on the plaintiff the burden of showing actual recognition of degrees by other institutions of higher learning. The Regional Commissioner did not attempt to devise an all encompassing determination but instead held that an institution that has only conditional degree granting power and has never granted a degree does not meet the requirement. Plaintiff has objected to these interpretations on the grounds that only schools in operation for four years or more could ever gain approval. Even if this were a sufficient objection, it does not apply here. Although a new school may not meet this requirement because they have never granted a degree, it could meet one of the alternative requirements that do not require the past issuance of degrees. The interpretation by the District Director and Regional Commissioner are reasonable and will not be overturned.

Both the District Director and Regional Commissioner interpreted the second requirement as placing on the plaintiff the burden of showing actual past acceptance of credits by other institutions. This interpretation is certainly not plainly inconsistent with the use of the words "have been and are accepted" in the regulation and, therefore, must be upheld.[3]

In determining whether the plaintiff has met the third requirement in this case, both the Regional Commissioner and the District Director accepted the opinion of the U.S.O.E. At the time the petition for approval was submitted by Royalton, it was not listed in the U.S.O. E. publications. Subsequently, the Vermont Department of Education conditionally approved Royalton as an institution with degree granting power.

The Vermont Department of Education then attempted to have Royalton entered into the U.S.O.E. publications citing the criteria for listing contained in the publications.

Institutions accredited or approved by a nationally recognized accrediting

---

2. The Regional Commissioner also decided that a college would have to have a certain degree of financial stability before it could be approved. See 8 C.F.R. § 214.3(e). Because it is not necessary to review his interpretation of the regulation and his factual findings on this point to dispose of this case, no decision will be made on the validity of his findings.

3. The Regional Commissioner also interpreted the word "unconditionally" in the regulation. See 8 C.F.R. § 214.3(b). This interpretation does not have to be reviewed to reach a decision in this case.

agency, by a state department of education, or by a State University are eligible for inclusion.

United States Office of Education, Education Directory, Part III, Higher Education 1 (1967). The U.S.O.E. denied the request on the ground that approval by the Vermont Department of Education merely conferred degree granting power. The U.S.O.E. noted that the Vermont statutes give the Department of Education no power to review institutions periodically and to revoke approval if they do not continue to keep up their standards. This power, according to the U.S.O.E. was a necessary part of the accrediting or approval process. Plaintiff apparently challenges that determination in this suit.

■ This Court has some doubt whether the decision of the U.S.O.E. is reviewable. The Commissioner of Education is authorized to publish bulletins on educational topics. 20 U.S.C. § 3 (1964). The statute does not provide that he must include certain schools in those bulletins nor is there any indication that congress intended review of decisions on the contents of these bulletins. Moreover, the U.S.O.E. is not engaged in either a legislative or judicial function when it makes a listing decision. Therefore, this is not the type of action that has traditionally been reviewed. Since plaintiff cannot prevail on the merits of its claim, however, disposition can also be made on that ground.[4]

The U.S.O.E. has consistently taken the position that accreditation or approval by a State Department of Educa-`

tion must involve the basic steps typically taken by a regional accrediting association. See United States Office of Education, Accredited Higher Institutions 130 (1965). Thus, before State approval can be the basis for listing in the U.S.O.E. publications, the State must show that it has a program for the establishment of criteria, evaluation of institutions, publication of a listing of accredited institutions and periodic review. Prior to the submission of the Royalton petition, the U.S.O.E. had decided that the Vermont Department of Education approval does not meet its standards because of the lack of statutory authority for periodic review. Id. at 129–130. The U.S.O.E. found that the recent amendments to the Vermont statutes did not add this power of periodic review and, therefore, reaffirmed its position with regard to the Vermont Department of Education approval when the Royalton petition was submitted.

The interpretation of its standards by the U.S.O.E. is not unreasonable. If mere approval for purposes of granting degrees were sufficient, all institutions could be included in the U.S.O.E. publications and, as a result, all institutions would automatically be approved for the purpose of admission of foreign students. Similarly, if periodic review was not necessary for inclusion in the U.S.O.E. publications, the Attorney General would have no way of insuring that institutions continue to meet the needs of foreign students. The interpretation of the standards is also consistent with the approval regulations since they state that "a charter shall not be considered a

---

4. The defendants have also moved to dismiss this case as to the Commissioner of Education on the ground that he is not a proper party. They have argued that since the Commissioner has only a consultive role and the I.N.S. may ignore his recommendations, this litigation does not affect him. See Flower Furniture Mfg. Corp. v. Esperdy, 229 F.Supp. 182, 184–85 (S.D.N.Y.1962).

The regulations give to the Commissioner a more active role than the defendants suggest. Any school that the U.S.O.E. includes in its publications is ultimately approved by the I.N.S. 8 C.F.R. § 214.3 (c). Any school that is not listed in the publications must meet other criteria. Only the U.S.O.E. decides whether to list the school. The I.N.S. is not given the power to review a U.S.O.E. decision to list or refuse to list a school. Therefore, the Commissioner of Education has more than an advisory role. Affirmative action on his part necessarily results in approval by the I.N.S. For this reason, he is a proper party in this case. See Chavez v. McGranery, 108 F.Supp. 255 (S.D.Cal. 1952).

license, approval or accreditation" and they provide for periodic review. See 8 C.F.R. §§ 214.3 (b), (h).

█ In response to plaintiff's third claim, this Court concludes that the factual findings made in denial of plaintiff's petition are supported by substantial evidence. See 5 U.S.C. § 706 (2) (E) (Supp. II 1966). Plaintiff has not submitted evidence that it "confers * * * recognized * * * degrees" as those terms are construed by the District Director and Regional Commissioner nor has it properly submitted evidence that its credits have been in the past accepted by at least three institutions listed in the U.S.O.E. publications.[5] Finally, the finding that the State Department of Education does not have the power of periodic review under the applicable Vermont statute is supported by substantial evidence.

█ Plaintiff's fourth contention is apparently based on the tenth amendment to the United States Constitution. That is, plaintiff has argued that the power over education is reserved to the state and that failure of the I.N.S. to approve plaintiff for admission of foreign students after the State of Vermont has given plaintiff degree granting powers infringes on the power of the state.

This contention is meritless. The power to regulate the admission of aliens into the United States is specifically granted to the Federal government by Article 1, Section 8 of the United States Constitution. Congress, in regulating immigration, may use any appropriate means to reach desired ends including performing functions that are normally performed by the state. See Oklahoma ex rel. Phillips v. Guy F. Atkinson Co., 313 U.S. 508, 534, 61 S.Ct. 1050, 85 L. Ed. 1487 (1941).

Accordingly, the defendant's motion for summary judgment is granted.

---

[5.] Plaintiff did attempt to submit such evidence after the Regional Commissioner had handed down his decision. Because of the lateness of the submission of evidence, however, it did not become part of the record. See 8 C.F.R. § 103.5. Therefore, it may not be considered in reviewing the administrative decision.