In the Matter of NICKERSON & NICK-
ERSON, INC., Debtor.

No. B 09575.

United States District Court,
D. Nebraska.

April 5, 1971.

Harold L. Rock, Omaha, Neb., for Official Creditor's Committee.

Paul Festersen, Omaha, Neb., for Debtor-in-Possession.

Richard Farrington, Springfield, Mo., for Lugene's, Inc.

Joseph Barmettler, Omaha, Neb., for Skelly.

MEMORANDUM AND ORDER

RICHARD E. ROBINSON, Chief Judge.

This matter comes before the Court upon a Certificate for Review from the Referee in Bankruptcy, pursuant to 11 U.S.C. § 67a[8]. [Filing #148].

The present controversy arose in a Chapter XI proceeding when Lugene's, Inc. applied to the Referee for an Order directing payment by the Trustee in Bankruptcy on an alleged secured indebtedness filed herein by Lugene's, Inc., on July 9, 1970.

In its application Lugene's, Inc., alleged that as of April 24, 1970, when the original petition herein was filed, Nick-

erson & Nickerson, Inc., the debtor-in-possession, owed to Lugene's, Inc., a debt in the sum of $177,519.57 which was and is allegedly secured by a security interest granted on March 6, 1970, in inventory. Lugene's Inc. prayed for an order that the debt of $177,519.57 be paid. The Official Creditor's Committee objected and opposed the application on the ground that the security interest on which the application for payment is based is invalid under various theories. Skelly Oil Company also opposed the application on similar grounds. The debtor-in-possession does not oppose the application.

The Referee certifies that when hearing on the application of Lugene's Inc. was held on July 29, 1970, only one theory was put forth by the Official Creditor's Committee. The theory advanced was, that by reason of an insufficient description of inventory in the security agreement, the security interest had not attached to the bulk of the inventory. The Referee, however, held that as of April 24, 1970, when the original petition was filed herein, the security interest had attached to all of the inventory which Lugene's claims as collateral. The Referee thereupon entered an order that the debtor-in-possession pay Lugene's the sum of $177,519.57, and in default of payment Lugene's, Inc., was given authority to foreclose its security interest in the inventory. The Referee has stayed that order pending determination of this Court's review thereof, on condition that the debtor-in-possession deposit $177,519.67 in a special interest account and hold it for payment if the order should be sustained by this Court.

The Official Creditors' Committee contends in its brief that Lugene's security interest attached only to the inventory of the type described which was located in the State of Missouri. The Committee bases this contention on certain language of the security agreement. The description of the collateral is as follows:

"All gifts, novelties, souvenirs, and other merchandise inventory held for resale including but not limited to the following:

See attached schedules for a list of property covered by this Security Agreement."

The security agreement also provided:

"Debtor Hereby Warrants and Covenants:

\* \* \* \* \* \*

3. That the Debtor's residence is The address shown above and The collateral will be kept at the Debtor's Stores as shown above."

The address shown was Eldon, Missouri. The Committee argues that the so-called "schedules" referred to in the security agreement, were not in fact attached, and the description of the collateral was no greater than that above. It is further contended that the statement "the collateral will be kept at the Debtor's Stores as shown above," limited the description of the collateral so that the collateral covered by the agreement was only the merchandise inventory held for resale by Nickerson in the city of Eldon, Missouri.

Lugene's Inc. counters the Committee's objection by referring to the testimony of Mr. Lewis Schawfer, Lugene's president, contained at page 14 of the hearing transcript. Mr. Schaefer testified, over objection of counsel for the Committee, that the "attached schedules" referred to in the security agreement were financing statements which were subsequently filed in each of the states wherein Nickerson did business." [Exhibits #2 through #13]. Lugene's contends that since the financing statements were attached as part of the security agreement itself, the description of the collateral is sufficient, because there was a financing statement for each of the states wherein Nickerson had its stores. Thus, it is contended, the phrase "the collateral will be kept at the Debtor's Stores as shown above," referred to all of the debtor's stores in all of the states for which there was an attached financing statement, and the inventory

covered was all of the inventory at all of these stores.

The security agreement contained a governing law clause which requires the application of the Uniform Commercial Code of Missouri.

Section 400.9–110 of Article 9 [Secured Transactions] of the Missouri version of the Uniform Commercial Code reads as follows:

> "For the purposes of this article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

The security agreement in question refers to "attached schedules" and as Lugene's points out, the unrebutted testimony of the president of Lugene's, Inc., establishes that these schedules were in fact the financing statements later filed in each of the states wherein Nickerson did business, and the Referee apparently found this testimony to be true.

In addition the very description of property offered by the debtor as collateral, that is, the merchandise inventory held for resale, suggests that the collateral would be located at the stores of the debtor.

Most of the security agreement is boiler plate, and it is worthy of note that Paragraph 3 of the debtor's warrants and covenants in the security agreement originally read as follows:

> "3. The Debtor's residence is the address shown above and the collateral will be kept at the Debtor's *residence* as shown above." [emphasis added].

The parties upon executing the agreement apparently crossed out the word "residence" and inserted the word "Stores". If the parties had intended, as argued by the Committee, that the security interest taken be limited solely to collateral located at Eldon, Missouri, the word "residence" would have been sufficient. The only conceivable reason they could have had for making the change, was to clarify the fact that the collateral would be located in all of the stores of Nickerson, not just in Eldon, Missouri. The fact that "Stores" is plural adds further weight to this construction of the agreement.

■ It should be noted that the Referee in entering his order relied upon the case of In re Center Auto Parts, 6 U.C.C.Rep. 398 [C.D.Calif.1968]. This Court agrees with the Referee that that case, while not on all fours with this case, accurately states the principle to be applied here. That principle is, that it is unnecessary to set forth the address where collateral is to be located, in the description of collateral, whenever it is obvious or readily inferable that the type of collateral covered would naturally be located in those places where the debtor does business.

■ This Court therefore finds that the Referee was correct in concluding that the description of collateral covered all merchandise inventory held for resale, at all of the stores of Nickerson. *See also* Security Tire & Rubber Co. Inc. v. Hlass, 246 Ark. 1084, 441 S.W.2d 91 [1969]; In re Goodfriend, 2 U.C.C.Rep. 160 [E.D.Pa.1964]; Thomson v. O. M. Scott Credit Corp., 1 U.C.C.Rep. 555 [Pa.1962]; National Cash Register Co. v. Firestone & Co., Inc., 346 Mass. 255, 191 N.E.2d 471 [1963].

The Official Creditors Committee next contends that even if this Court should uphold the Referee's decision as to the sufficiency of the description of collateral, the case must be remanded for further findings on the question of the adequacy of the secured inventory to satisfy the $177,519.57 debt.

The Committee argues that since neither the security agreement nor the financing statement covered after acquired inventory, only that inventory on hand when the agreement was entered into on March 6, 1969, can be considered security for Lugene's debts, and that since it is not clear from the record how much of the $177,519.57 that is to be turned over to Lugene's arose from the sale of inventory on hand on March 6,

1969, the matter should be remanded for further findings.

■ The Committee's argument is premised on the view that the security agreement should be considered as attaching separately to each distinct item included in the inventory. However, this Court is of the opinion that inventory subject to a security agreement should be looked upon as a single entity and not as collection of individual items. "In other words, the *res* which is the subject of the lien * * * is the merchandise or stock in trade, conceived of as a unit presently and continuously in existence—a 'floating mass', the component elements of which may be constantly changing without affecting the identity of the res." Manchester National Bank v. Roche, 186 F.2d 827, 831 [1st Cir. 1951]. Inventory is like a river, the water in which continually flows, rises and falls, but which always constitutes a river. *See* Henson, "Proceeds" Under the Uniform Commercial Code, 65 Col.L.Rev. 232 [1965]; Rosenberg v. Rudnick, 262 F.Supp. 635 [D.Mass. 1967].

Section 400.9–204[3] of the Uniform Commercial Code of Missouri provides that " * * * a security agreement may provide that collateral, whenever acquired, shall secure all obligations covered by the security agreement."

■ On the foregoing authorities this Court holds that when a security interest is taken in *inventory* of a business, after-acquired inventory is automatically covered by the agreement unless it is clearly set out that only certain items of inventory are to be covered. This is the most commercially reasonable manner in which to construe a security interest in inventory, and if there is one maxim by which transactions governed by the Uniform Commercial Code should be construed it is surely that they be construed in the most commercially reasonable manner.

■ Finally, it should be pointed out that the proceeds from the sale of merchantive inventory by Nickerson, are covered by the present case. It was said in the case of Universal CIT Credit Corp. v. Prudential Investment Corp.. 101 R.I. 287, 222 A.2d 571 [1966], that "[i]f the security holder wishes to obtain a security in 'proceeds,' he checks the box on the financing statement opposite the phrase 'Proceeds of Collateral are also covered.' " In the present case the "Proceeds" box on each of the financing statements was checked, and the Lugene's Inc. therefore had a security interest in the proceeds from the sale of merchandise inventory by Nickerson.

Lugene's, Inc. filed financing statements, indicating a security interest in inventory held for resale and proceeds, in Arizona, Arkansas, Colorado, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, Ohio, Oklahoma, and Texas. Each of the aforesaid states has adopted Article 9 of the Uniform Commercial Code.

Section 9–302 of the Code as adopted in the above states provides that "a financing statement must be filed to perfect all security interests except" some eight described forms of security interests. The present security interest does not come within any of the exceptions.

Each of the above states has adopted a version of section 9–401 of the Code, which relates to the proper place of filing. Lugene's, Inc., as shown by the exhibits, complied with the filing requirements of each state and therefore obtained a perfected security interest in inventory held for resale and proceeds at the Nickerson store in each state. Accordingly,

It is ordered that the Referee's Order of August 20, 1970 in the above-entitled proceeding should be and is hereby affirmed in all respects. And,

It is further ordered that the Official Creditors' Committee's Petition for Review is dismissed.