**In re KELTON MOTORS, INC., Debtor.**

**Bankruptcy No. 88–00255.**

United States Bankruptcy Court,
D. Vermont.

June 13, 1990.

See also, Bkrtcy., 109 B.R. 641.

N. Creswell, Paterson & Walke, P.C., Montpelier, Vt., for Freightliner Corp. and Mercedes–Benz Truck Co., Inc.

G. Glinka, Glinka & Palmer, Cabot, Vt., Trustee, pro se.

MEMORANDUM OF DECISION
GRANTING RELIEF FROM
AUTOMATIC STAY

FRANCIS G. CONRAD, Bankruptcy Judge.

Movants seek relief from the automatic

stay[1] to apply a credit against an amount due them from Kelton Motors, Inc. (Debtor). Trustee objects and claims Movants were not properly perfected under Article Nine of Vermont's UCC, 9A Vt.Stat.Ann. §§ 9–101, et seq., because the "all inventory" descriptions in Movants' financing statements do not expressly include property Debtor may acquire after the execution of the financing agreements. We hold under the facts of this proceeding that the "all inventory" description in the financing statement is adequate to perfect the security interest in the "after-acquired" property.

The facts are stipulated and undisputed. Movants, Delaware corporations with their principal place of business in Portland, Oregon, are engaged in the manufacture and distribution of trucks, parts, and accessories for Freightliner and Mercedes–Benz.

Prepetition, Movants and Debtor entered into a "Freightliner Dealer Sales and Service Agreement." The dealer agreement appointed Debtor an independent dealer for Movants' products. Debtor operated Freightliner and Mercedes–Benz dealerships in South Burlington, Vermont and White River Junction, Vermont.

Movants and Debtor entered into identical Security Agreements, dated January 31, 1986 and July 25, 1986, for each of Debtor's dealerships. Pertinent terms of the security interest and description of collateral from the security agreements include:

**1. SECURITY INTEREST.** As security for the payment of all obligations of Dealer to Company now existing or hereafter acquired, including any extensions or renewal thereof, Dealer grants to Company a Security Interest in the collateral as hereinafter described, now existing or hereafter acquired; with respect to inventory purchased from Company, the security interest herein granted shall be a purchase money security interest. Company shall have the right to possession of any title, certificates or manufacturer's certificate of origin covering the collateral.

**2. DESCRIPTION OF COLLATERAL.** As used herein, the term 'collateral' shall mean all of Dealer's inventory purchased from Company or other vendors including, without limitations, all new or used vehicles, glider kits, parts, accessories, and other related items, and all proceeds of the sale or other disposition of said inventory....

Movants' Exhibit B.

Movants and Debtor stipulated that the UCC–1 financing statements were properly executed and filed. The movants are perfected.

The financing statements contain an identical description of collateral:

All inventory including without limitation, all new or used vehicles, glider kits, parts, accessories, and other related items, and all proceeds of the sale or other disposition of said inventory.

Movants' Exhibit C. Each of the financing statements have checked the box "Proceeds of Collateral are also covered."

Debtor defaulted on its August, 1988 open account obligation to pay for Movants' parts. During the week of September 25, 1988, Debtor surrendered to Movants parts from its White River Junction, Vermont dealership. On October 6, 1988, Movants replevied the parts from Debtor's South Burlington, Vermont dealership under a Writ of Replevin issued by Chittenden Superior Court for the State of Vermont. (Exhibit D). The parties stipulated the amount of debt owed to Movants is $254,778.04 and value the replevied and repossessed parts at $85,329.02.

After the Writ of Replevin issued, an involuntary petition under 11 U.S.C. § 303 was filed against Debtor on October 27, 1988. Later, Debtor was converted to a case under Chapter 11, 11 U.S.C. §§ 101, et seq. And subsequently, Debtor was converted to a case under Chapter 7, 11 U.S.C. §§ 101, et seq.

Movants filed a motion for relief from the automatic stay and requested an order

---

1. 11 U.S.C. § 362. We have subject matter jurisdiction under 28 U.S.C. § 1334(b) and the general reference to this Court under VLBR 7012, Part V of the District Court Rules for the District of Vermont. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

terminating or modifying the stay to permit Movants to credit the value of motor vehicle parts repossessed and replevied from Debtor's motor vehicle dealerships prior to Debtor's involuntary petition.

The issue presented is whether the descriptions in the financing statements are adequate to perfect Movants' security interest in parts acquired after the creation of the security agreements.[2]

■ The Bankruptcy Code defines a "security interest" as a "lien created by an agreement." 11 U.S.C. § 101(45). A "security agreement" is defined as an "agreement that creates or provides for a security interest." 11 U.S.C. § 101(44). State Law determines whether an agreement creates a lien. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct 914, 918, 59 L.Ed.2d 136, 9 BCD 1259, 19 CBC 481 (1979).

■ 9A Vt.Stat.Ann. § 9–110, Sufficiency of description, provides:

For the purposes of this article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described.

The Uniform Laws Comment for § 9–110 provides in part:

The requirement of description of collateral ... is evidentiary. The test of sufficiency of a description laid down by this Section is that the description do the job assigned to it—that it make possible the identification of the thing described. Under this rule courts should refuse to follow the holdings, often found in the older chattel mortgage case, that descriptions are insufficient unless they are of the most exact and detailed nature, the so-called 'serial number' test....

Hawkland summarizes five purposes a description of collateral serves:

1. To indicate clearly the property in which the debtor is giving up a security interest and in which the creditor is taking a security interest.
2. To avoid or settle disputes between the secured party and the debtor and between either of those parties and third parties.
3. To enable the creditor to identify and repossess the collateral in the event of a default by the debtor.
4. To provide reasonable notice to all interested third parties what property is or may be claimed as collateral.
5. To enable other potential or actual creditors to determine, upon inquiry, what collateral is subject to the security interest.

8 Hawkland, Lord & Lewis, UCC Series, § 9–110:02, Art. 9, page 295 (Supp.1989).

We had occasion to apply § 9–110 to test a description in a security agreement of a purchase money financier of inventory and determined the description of "all inventory ... now or hereafter owned ..." in the security agreement was adequate. *In re Southern Vermont Supply, Inc.,* 58 B.R. 887, 891 (Bkrtcy.D.Vt.1986). It is clear the description of collateral in Movants' security agreements reaches after-acquired property.

■ Unlike the description in Movants' security agreements, however, their financing statements do not expressly mention after-acquired property.

Trustee takes the position that:

[t]he phrase 'all inventory' necessarily means 'all (present) inventory' not 'all inventory past, present, and future.' If a creditor seeks to put others on notice of a claimed security interest in all inventory, now or hereafter acquired, it is hardly a paralyzing burden to require this creditor to include the words 'now or hereafter acquired' in the financing statement and, conversely, it is altogether reasonable for another creditor to assume that the absence of such language limits the creditor's interest to inventory existing at the time.

Trustee's Objection to Motion for Relief from Stay and Supporting Memorandum, pages 1–2.

While Trustee's point may be well taken for descriptions for security agreement, see, e.g., *In re Middle Atlantic Stud Weld-*

---

**2.** Movants are purchase money lenders under 9A Vt.Stat.Ann. § 9–312(3).

*ing Co.*, 503 F.2d 1133, 1136 (3d Cir.1974) ("On the other hand, it is neither onerous nor unreasonable to require a security agreement to make clear its intended collateral,"); *In re Taylored Products, Inc.*, 5 UCC Rep.Serv. 286, 290 (W.D.Mich.1968); *Schechter v. Nelson (In re Nightway Transportation Co., Inc.)*, 96 B.R. 854, 857 (Bkrtcy.N.D.Ill.1989); *Covey v. First National Bank In East Peoria (In re Balcain Equipment Co., Inc.)*, 80 B.R. 461, 462 (Bkrtcy.C.D.Ill.1987), it does not apply to financing statements.

Despite the fact that the purposes of the descriptions of collateral may overlap for both security agreements and financing statements:

> [n]evertheless, these two documents serve essentially different functions and should be kept separate for purposes of analyzing whether a description contained in either of them is sufficient under the circumstances. Thus, the security agreement is, above all, an agreement, indicating the property in which the debtor has conveyed a security interest to the creditor. It is in the nature of a statute of frauds, designed to establish whether a security interest in fact exists and its scope or extent.
>
> By contrast, the financing statement, which filed of public record, is primarily designed to put potentially interested third parties on notice that a security interest is or may be claimed in particular property owed by the debtor. Thereafter, the interested third party may obtain fuller information by making inquiry under other provisions of Article 9. Therefore, it may ordinarily be expected that the description of collateral in the security agreement will be somewhat more particular than that contained in the financing statement....

8 Hawkland, Lord & Lewis, UCC Series, § 9–110:02, Art. 9, page 295 (Supp.1989) (footnotes omitted).

■ Moreover, a financing agreement cannot serve as a security agreement nor may a description contained in a financing statement have the effect of enlarging the security agreement so as to create a security interest in collateral not described therein. See, *Mitchell v. Shepherd Mall State Bank*, 458 F.2d 700, 704 (10th Cir.1972).

Vermont law (1962 UCC version) distinguishes between descriptions in security agreements and financing statements. 9A Vt.Stat.Ann. § 9–402(1), Formal requisites of financing statement; amendments, provides in part:

> (1) A financing statement is sufficient if it ... contains a statement indicating the types, or describing the items, of collateral....

The Uniform Laws Comment for § 9–402(1) provides in part:

> 1. Subsection (1) sets out the simple formal requisites of a financing statement under this Article. These requirements are: ... (2) a description of the collateral by type or item....
>
> 2. This Section adopts the system of 'notice filing' which has proved successful under the Uniform Trust Receipts Act. What is required to be filed is not, as under chattel mortgage and conditional sales acts, the security agreement itself, but only a simple notice which may be filed before the security interest attaches or thereafter. The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs.... Notice filing has proved to be of great use in financing transactions involving inventory, accounts and chattel paper, since it obviates the necessity of refiling on each of a series of transactions in a continuing arrangement where the collateral changes from day to day. Where other types of collateral are involved, the alternative procedure of filing a signed copy of the security agreement may prove to be the simplest solution.

The clear purpose of § 9–402(1) is to provide the minimum information necessary on a financing statement for a UCC–1 searcher to be on notice that a creditor may have a security interest in the described collateral. *In re My Place or Yours, Inc.*,

34 B.R. 197, 198 (Bkrtcy.D.Vt.1983), citing, *In re Excel Stores, Inc.*, 341 F.2d 961, 2 UCC Rep.Serv. 316, 318 (2d Cir.1965).

Recently we applied §§ 9–110 and 9–402(1) to an "all inventory" description in a financing statement and determined "all inventory," without more, is adequate to reach after-acquired property. *Vermont National Bank v. Vermont Custom Boats, Inc., et. al. (In re Vermont Custom Boats, Inc.)*, unpublished opinion, Adv.Pro. 87–0001, Conrad, B.J., (May 10, 1989). Appendix A attached.

*American Employers Insurance Company v. American Security Bank, N.A.*, 747 F.2d 1493 (D.C.Cir.1984) is representative of the rationale of our position that the financing statement need not state "future" or "after-acquired" to reach after-acquired accounts or inventory collateral:

> Accounts receivable and inventory are not like other classes of collateral. These types of collateral are constantly turning over, and are usually conceived of as a single entity.... The financing statement need not say 'future' or 'after-acquired' in order to include after-acquired collateral of the same type as described in it.... The purpose of the financing statement is to put the creditor on notice of a potentially superior security interest so that he can consult the security agreement and possibly the filing creditor to determine whether the collateral is indeed included. A description of 'all accounts' is sufficient to put a creditor on notice that after-acquired accounts receivable might be included in the security agreement.
>
> It is reasonable to read a security agreement granting an interest in all inventory or receivables to include after-acquired inventory or receivables....

*Id.*, 747 F.2d at 1500–01. (Citations omitted). Accord, *National Bank of Texas v. West Texas Wholesale Supply Company (In re McBee)*, 714 F.2d 1316, 1330–31, 36 UCC Rep.Serv. 1473, 1478 (5th Cir.1983) ("Texas adheres to the majority rule that an interest in inventory is generally assumed to cover after-acquired inventory, and that a secured party's interest in the

new inventory remains perfected."); *In re Page*, 16 UCC Rep.Serv. 501, 504 (M.D.Fla. 1974) (notwithstanding the absence of an after-acquired clause, "any reasonable secured party would be fully aware that this type of business [dealer in retail automobile parts] presupposes a constant change in the inventory. Therefore, it is obviously unreasonable to assume that anyone would have received or acquired or intended to acquire a security interest in an inventory with the rigid limitation that it should be limited to the same items which made up the inventory on the date the document was executed."); *In re Nickerson & Nickerson, Inc.*, 329 F.Supp. 93 (D.Neb.1971) ("Inventory is like a river, the water in which continually flows, rises and falls, but which always constitutes a river.... when a security interest is taken in inventory of a business, after-acquired inventory is automatically covered by the agreement...." *Id.*, 329 F.Supp. at 96, aff'd, 452 F.2d 56 (8th Cir.1971)); *Matter of Fibre Glass Boat Corp.*, 324 F.Supp. 1054, 1056 (S.D.Fla. 1971), aff'd without opinion, 448 F.2d 781 (5th Cir.1971); *Howard v. Universal C.I.T. Credit Corp.*, 203 F.Supp. 279, 1 UCC Rep. Serv. 515, 525 (W.D.Pa.1962); *In re American Family Marketing Corporation*, 92 B.R. 952, 954 (Bkrtcy.M.D.Fla.1988); *In re Gary & Connie Jones Drugs, Inc.*, 35 B.R. 608, 611–12 (Bkrtcy.D.Kan.1983); *Westinghouse Credit Corp. v. Dugas (In re Stofko)*, 17 B.R. 115, 118–19 (Bkrtcy.W.D.Pa. 1981); *Borg–Warner Acceptance Corp. v. Wolfe City National Bank*, 544 S.W.2d 947, 21 UCC Rep.Serv. 631, 635 (Tex.Ct. of Civ.App.1976); *James Talcott, Inc. v. Franklin National Bank of Minneapolis*, 292 Minn. 277, 194 N.W.2d 775, 10 UCC Rep.Serv. 11, 25 (1972). See, *Biggins v. Southwest Bank*, 490 F.2d 1304, 1309 (9th Cir.1973) (despite the absence of the term inventory from the financing statement, new and used automobiles was equivalent to the UCC's definition of "inventory").

We conclude the description of "all inventory" in Movants' financing statements reaches after-acquired property. Trustee's objection is overruled. Movants are entitled to relief from the automatic stay to credit $85,329.02 from the replevied and

repossessed parts against the amount owed of $254,778.04 by Debtor. An appropriate order will enter.

APPENDIX A

UNITED STATES BANKRUPTCY COURT

DISTRICT OF VERMONT

Case Nos. 86–143 & 86–144

(Consolidated)

Adv. Proc. No. 87–0001

Filed May 10, 1989

MEMORANDUM DECISION[1] ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

In re Vermont Custom Boats, Inc. Bayside Marine, Inc., Debtors

Vermont National Bank, Plaintiff

v.

Vermont Custom Boats, Inc., Bayside Marine, Inc., Jerome I. Meyers, Trustee, Rodney S. Mayo, American Acceptance Corp., Borg–Warner Acceptance Corp., Chittenden Trust Co., Chris Craft Division of Murray Industries, Howard Bank, ITT Commercial Finance Corp., Merchants Bank, Midlantic National Bank North, N.A.,[2] Triple S. Sporting Supply, Inc., Vermont National Bank, Wellcraft Marine Corp., and Westinghouse Credit Corp., Defendants.

APPEARANCES:

J. Meyers, Esq., White River Junction, Vermont, Trustee Pro Se (Trustee).

N. Williams, Gravel and Shea, Burlington, Vt., for Vermont Federal Bank (VFB).

This matter is before us on the Trustee's motion for partial summary judgment on his second amended cross-claim against VFB. The issue is whether the description of collateral on the parties' financing statements is sufficient to perfect a security interest in a Catalina Sailboat recovered by the Trustee. Based on the facts and memoranda of law, we find that the description of collateral as "all inventory (not floor-planned)" is sufficient to perfect a security interest in the inventory of the Debtor. Because, however, we cannot find that the boat in question was in fact proceeds of Debtor's inventory, we deny the Trustee's motion for summary judgment.

One of the consolidated Debtors, Bayside Marine, Inc.,[3] a retail seller of boats, filed a voluntary petition for relief under Chapter 11 of Title 11 of the U.S.Code, 11 U.S.C. §§ 101, et seq., on August 8, 1986. The case was converted to a Chapter 7 liquidation case on October 9, 1986. An adversary proceeding was commenced on November 2, 1988 by VFB to determine, inter alia, the validity of its security agreements with the Debtor(s).

On November 11, 1988, the Trustee moved for partial summary judgment on his second amended cross-claim against VFB. The parties filed briefs with the Court. At a pre-trial conference on January 17, 1989, they agreed to waive their right to a hearing and requested the Court to decide the issue based on the pleadings. The matter was taken under advisement.

The facts are undisputed. On August 20, 1985, Rodney S. Mayo, acting as president of Bayside Marine, Inc., and in his individual capacity, signed a Promissory Note and a Security Agreement in connection with a loan to Bayside Marine, Inc. A financing statement was signed by Mayo only in his capacity as president. The loan was from VFB in the amount of $25,000. On August 22, 1985, VFB properly filed the financing statement with the Colchester,

---

1. We have jurisdiction to hear this adversary proceeding under 28 U.S.C. § 1334(b) and determine it to be a 28 U.S.C. § 157(b)(2)(K) core matter. This Decision constitutes findings of fact and conclusions of law under Rules Practice and Procedure in Bankruptcy Rule 7052, as made applicable by F.R.Civ.P. 52.

2. Midlantic National Bank, North, N.A. was dismissed voluntarily from this proceeding on June 16, 1988.

3. The cases of Vermont Custom Boats, Inc. and Bayside Marine, Inc. were consolidated on October 9, 1986. This partial summary judgment motion involves Bayside Marine, Inc. only.

Vermont Town Clerk's Office. This specific financing statement covers:

"[a]ll accounts, accounts receivable, contracts, contract rights, all inventory (not floorplanned), wherever situated; all equipment, machinery, furniture, fixtures, all general intangibles, now owned or hereafter acquired, including any and all substitutions thereof and additions thereto and proceeds of same."

In addition to the reference above, a marked box on the financing statement indicated that the instrument also covered products and proceeds of the collateral. An identical financing statement was also filed with the Vermont Secretary of State.

On February 23, 1986, Mayo, again as president of Bayside Marine, Inc., but not in his individual capacity, signed a predated "loan and security agreement" (dated November 27, 1985) with VFB in connection with a loan for $340,323. On February 28, 1986, VFB properly filed a financing statement with the Colchester, Vermont Town Clerk's Office and the Vermont Secretary of State regarding its second loan to Bayside Marine, Inc. The second financing statement, broader than the first, covered "[a]ll personal property of Debtor of whatever kind and nature and wherever located." Both parties have agreed that Vermont law applies.

On or before March 29, 1986, a third-party traded in the sailboat in question for a different boat with Bayside Marine, Inc. In January 1988, the Trustee recovered the sailboat for the estate. It was later sold for $6,500.

Although VFB did not formally move for summary judgment, it filed a brief in opposition to the plaintiff's motion. The arguments made in VFB's brief would also serve to support a request for summary judgment in its favor; moreover, the parties and the Court understand that this hearing on the motion would result in a

Decision on the merits. This matter, therefore, will be treated as if it had been presented on cross motions for summary judgment. *Calabi v. Malloy,* 438 F.Supp. 1165, 1167, amended, 468 F.Supp. 76 (D.C. Vt.1977).

On a motion for summary judgment, the moving party may prevail only where there is no genuine issue of any material fact, and the moving party is entitled to prevail on the law. F.R.Civ.P. 56; *Royalton College, Inc. v. Clark,* 295 F.Supp. 365 (D.C. Vt.1969). A genuine issue of material fact exists if there is a factual issue in dispute which might affect the outcome of litigation, and there is sufficient evidence on both sides of the issue that it could easily be resolved in favor of either party. *Scan–Plast Industries, Inc. v. Scanimport America Inc.,* 652 F.Supp. 1156, 1160 (E.D. N.Y.1987). A dispute of fact is material if it affects the outcome of litigation and genuine if manifested by substantial evidence going beyond allegations of the complaint. *Donovan v. ELCA of New Hampshire, Inc.,* 615 F.Supp. 106, 107 (D.C.N.H.1984).

The moving party has the burden of demonstrating absence of any material factual issues genuinely in dispute; the Court must view all reasonable inferences in a light most favorable to the nonmovant. *Galvin v. State of Vermont,* 598 F.Supp. 144, 146 (D.C.Vt.1984); see, *Valente v. Moore Business Forms, Inc.,* 596 F.Supp 1280, 1287 (D.C.Vt.1984).

The Trustee alleges that both financing statements do not adequately describe VFB's security interest in the sailboat under Title 9A Vt.Stat.Ann. §§ 110 [9–110] and 402(1) [9–402(1)] (corresponding to §§ 9–110 and 9–402 of the Uniform Commercial Code).[4] The Trustee, therefore, alleges that VNB's security interest in the sailboat is unperfected and should be declared inferior to the Trustee's interest.[5] Finally, the Trustee argues that the financing statements failed to perfect any security interest in the particular sailboat be-

**4.** Vermont has adopted the 1962 Version of the Uniform Commercial Code.

**5.** A trustee in bankruptcy may avoid unperfected security interests. 11 U.S.C. § 544(a), Title

9A Vt.Stat.Ann. § 9–301(3); see, *In re McBee,* 714 F.2d 1316, [1321] (5th Cir.1983), 36 UCC Rep.Serv. 1473, 1478.

cause the boat was not in the possession or ownership of the Debtor until after the date of the recording of the financing statements.

We address only the adequacy of the August 22, 1985 financing statement because we hold that the description contained in that financing statement combined with the security agreement is sufficient, assuming no other priority claimant exists, to perfect an interest in the sailboat. We decline until another day to discuss whether the "super generic" description "all personal property" is sufficient to perfect a security interest. We also do not decide the Trustee's argument about possession or ownership because material facts on this issue are in dispute.

A security interest in collateral arises upon the parties' execution of a valid security agreement. 9A Vt.Stat.Ann. §§ 9–201 and 9–203. A security interest cannot attach to collateral until there is an agreement that it attaches, value is given, and the debtor has rights in the collateral. 9A Vt.Stat.Ann. § 9–204(1). To perfect a security interest, a creditor generally must file a financing statement. 9A Vt.Stat.Ann. § 9–302. A security interest is perfected when it has attached, 9A Vt.Stat.Ann. § 9–204(1), and when all applicable steps required for perfection have been taken. The steps required for perfection of a security interest need not be taken in any order. *In re Southern Vermont Supply, Inc.*, 58 BR 887, 892 (Bkrtcy.D.Vt.1986). A perfected security interest gives the creditor priority over holders of unperfected or subsequently perfected interests in the same collateral. 9A Vt.Stat.Ann. §§ 9–301(1)(a) & 9–312(5).

A financing statement is sufficient if it provides the names and addresses of the debtor and secured party, is signed by the debtor, and "contains a statement indicating the types or describing the items, of collateral." 9A Vt.Stat.Ann. § 9–402(1). The financing statement's primary purpose is to put potentially interested third parties on notice that a security interest is, or may be, claimed in particular property owned by the debtor. UCC § 9–402, Official Comment 2. See also, *In re Laminated Veneers Co., Inc.*, 471 F.2d 1124 (2d. Cir.1972 [1973]); *Matter of Tri–State Equipment, Inc.*, 792 F.2d 967 (10th Cir.1986); *Clare v. First National Bank of Louisville (In re Cooley)*, 624 F.2d 55, 29 UCC RS 1415 (6th Cir.1980); *In re Malzac*, 14 UCC RS 1223 (D.Vt.1974) (Marro, B.J.); *Nolin Production Credit Association v. Canmer Deposit Bank*, [726 S.W.2d 693] 2 UCC RS.2d 636 (Ky.CA 1986); *Marine Midland Bank, N.A. v. Smith Boys, Inc.* [129 Misc.2d 37] 492 N.Y.S.2d 355, 41 UCC RS 1843 (S.Ct.N.Y.1985); *Borg–Warner Acceptance Corp. v. Wolfe City National Bank*, 544 S.W.2d 947, 21 UCC RS 631 (Tex.Ct. of Civ.Appeals 1976); *Stone Fort National Bank of Nacogdoches v. Citizens State Bank of Corrigan*, 722 S.W.2d 508, 3 UCC RS.2d 350 [, 358] (Tex.Ct.Appeals 1986).

Notice filing contemplates that the third party creditor will be directed to the security agreement underlying the filing (sic) statement for a controlling description of the collateral. *In re Durbin, Inc.*, 46 B.R. 595, 601 (Bkrtcy.S.D.Fla.1985). But, the mere filing of a financing statement does not create a mandatory duty upon third parties to contact the debtor or creditor in every instance. *Id.* at 601.

Because the purpose of the financing statement is merely to alert third parties to inquire further for more details, the description of the collateral is sufficient if it reasonably identifies what is described. 9A Vt.Stat.Ann. § 9–110. "The test of sufficiency of a description laid down by this Section [9–110] is that the description do the job assigned to it—that it make possible the identification of the thing described." 9A Vt.Stat.Ann. § 9–110 Comment; *In re Southern Vermont Supply, Inc.*, supra, at 891; *In re Softalk Pub. Co., Inc.*, 856 F.2d 1328, 1331 (9th Cir.1988).

One purpose of § 9–110 is to liberalize the description requirement in the financing statement under § 9–402. Bankruptcy Judge Marro has said: "under the UCC great liberality is afforded in determining the sufficiency of the description of collateral." *In re Malzac*, supra, at 1226. The

*Malzac* Court stated that under 9A Vt.Stat. Ann. § 9–110, a description of collateral is sufficient if it:

> "direct[s] inquiry on the part of the party examining it.... A general description of collateral in the financing statement is sufficient since it is designed merely to put creditors on notice that there is a need for further investigation as to the property covered by the security agreement."

*Id.* at 1226–27.

The Trustee argues that the phrase "all inventory" in the first financial statement is inadequate to put a reasonable creditor on notice that a security interest could be claimed on the sailboat. We disagree. The UCC has not defined "types of collateral." A majority of Courts, however, have held that the word "types" does include the generically designated subcategories of tangible or intangible collateral, including "inventory", under § 9–109.[6] *Stone Fort National Bank of Nacogdoches v. Citizens State Bank of Corrigan,* supra ("all inventory" held adequate description of collateral in financing statement); *Borg–Warner Acceptance Corp. v. Wolfe City National Bank,* supra ("all inventory" held adequate description of collateral on financing statement); *Thomson v. O.M. Scott Credit Corp.,* 1 UCC RS 555, 10 Ches Co L Rep 405, 28 Pa D & C.2d 85 (1962) ("all inventory" held adequate description of collateral in security agreement and financing statement).

In Stone Fort, the debtor executed a security agreement which granted the bank a security interest in "all inventory" of the debtor's heavy equipment business. *Stone Fort,* 722 S.W.2d 508, 3 UCC RS.2d at 359. The financing statement described the collateral as "all ... inventory, new and used...." *Id.* The Court stated that the financing statement:

> "was sufficient to put any party subsequently considering taking a security interest in the property [of the debtor] on

notice that [the bank] claimed a security interest in any such property which would be properly classified as inventory."

*Id.*

In *Thomson,* the defendant stated that the bank's financing statement's description of collateral as "inventory" was "too vague," and argued that the petitioner's security interest must be more specific. *Thomson,* 1 UCC RS at 559. The Court disagreed, stating that the UCC refers to security interests in "inventory" as defined in UCC § 9–109 and that "[a]ll goods held for sale come within the scope of the term...." *Id.* The Court explained that to count all possible types of articles handled would be unreasonably burdensome and neither within the letter or the spirit of the UCC. *Id.*

The Trustee, in support of his position, cites *In re Bell,* 6 UCC 740 (D.C.D.Colo. 1969), where the Court found the sub-category "consumer goods" is an inadequate means for describing collateral. We do not find the rationale in *In re Bell* applicable here. There, the Court held the description "consumer goods" is inadequate for financing statement purposes because the status of the goods as consumer or otherwise depends on the intent of the purchaser when the goods are bought and not when the financing statement is given.

We believe the Code's purpose regarding financial statements is simply to provide notice to interested third parties that an interest in that particular collateral is or may be claimed. A description of collateral in the financing statement as "all inventory," satisfies the purpose of § 9–402. This is true even though such a description does not enable a third party to immediately find out which particular piece of inventory is encumbered. Further investigation into the identity of the encumbered property by the creditor is consistent and expected under the Code, see UCC § 9–208, although not mandatory.

6. The UCC drafters classified goods into four subtypes: consumer goods, equipment, farm products and inventory. Such classification of goods into subcategories is important in relation to other sections contained in Article 9.

Bayside Marine, Inc. is a boat retailer. It makes commercial sense that it would have boats in inventory. The words "all inventory (not floorplanned)" on a financing statement is sufficient notice to an investigating creditor that VFB has a security interest in boats, not floorplanned, which would be properly classified as inventory. Accordingly, the financing statement filed on August 22, 1985 adequately describes the creditor's collateral interest in the Debtor's inventory.

The Trustee provides no proof, however, that the boat bartered in exchange for the sailboat was in fact part of the Debtor's inventory. Under § 9–109(4), "goods are ... 'inventory' if they are held by a person who holds them for sale...." Id. Neither of the parties' briefs presented any facts indicating whether the Debtor was in fact the owner of the bartered boat, although the trustee has raised questions about who is the rightful owner. Furthermore, if the Debtor was not the owner of the bartered boat, the parties have presented no facts determining if the Debtor had authority to encumber the boat for its own debts.

If Bayside Marine, Inc. owned the bartered boat, then the sailboat trade-in became proceeds of the sale of that boat, i.e., inventory, under the security agreement and financing statement between the parties. If Bayside Marine, Inc. did not own the bartered boat, and sold it without authorization, then the boat was not attachable under VFB's security agreement with Bayside Marine, Inc. The sailboat, therefore, would not be proceeds of the sale of Bayside Marine, Inc.'s inventory. This is an issue which must be resolved by evidence.

Accordingly, because the Trustee and VFB failed to show there is no genuine issue as to material facts necessary to prove that the boat was in fact Bayside Marine, Inc.'s inventory, and not covered by VFB's security agreement, summary judgment is denied.

An appropriate Order will be entered.

(s) Francis G. Conrad
Francis G. Conrad
U.S. Bankruptcy Judge